Berry *v.* Dwinel.

# COUNTY OF AROOSTOOK.

————————O————————

LEVI BERRY *versus* RUFUS DWINEL ET AL.

Where a party contracts to deliver goods at a particular time and place, and no payment has been made; the true measure of damages is the difference between the contract price and that of like goods at the time and place where they should have been delivered; but if there be no market value at the place of delivery, the value of the goods should be determined at the nearest place where they have a market value, deducting the extra expense of delivering them there.

Neither the gain or loss which the contracting party might have made, or necessarily suffered if the contract had been performed, or the purposes and objects of the contract, can affect the measure of damages for the non-fulfillment of the same.

EXCEPTIONS were taken by the plaintiff to the rulings of CUTTING, J.

The ACTION is ASSUMPSIT on an account annexed for cutting and hauling about two million feet of pine and spruce logs. The logs were cut under a written contract, by the terms of which the plaintiff agreed to cut and haul at least four million feet. The present action was brought to recover the balance due for cutting and hauling the logs actually cut at the contract price, a part having been paid.

To prove the damages sustained by the defendants for a non-performance of the full terms of the contract on the plaintiff's part, the defendant offered evidence to prove the damages sustained by him from not having a sufficient quantity of logs to stock his mills at Oldtown; and that in the spring of 1854 logs were bought at Mattawamkeag Forks, on the Mattawamkeag stream, at the rate of five to seven dollars per M. This evidence was objected to by the plaintiff, but admitted.

The defendant, Dwinel, testified that he contracted with the plaintiff to cut and haul these logs for the purpose of stocking his mills at Oldtown; that he did not intend to sell them at all in the log, but it was his intention to manufacture them into lumber, and he claimed damages for want of the lumber to manufacture at his mills.

On the contrary, the plaintiff contended, and offered evidence tending to prove, that the non-performance of the contract was the occasion of no damage to the defendant, but that he was benefited by it, as the logs were of less value than their cost, had they been cut.

The court instructed the jury, among other things, that in considering the question of damages sustained by the defendant, from the non-performance of the contract, they would find whether the logs had a marketable value at Mattawamkeag Forks; if so, they would take the price there as the criterion of the value of the logs, and find damages accordingly, without any regard to the defendants' design respecting them; that it was of no importance what they would have done, or intended to do, with the logs, if they had been cut, or what their object was in contracting to have them cut, but they would estimate the damages according to the market value of the logs, at the first place where they had a marketable value, whether it was on the shore where they were cut, or in the river at the Forks, or in the boom, after deducting from such marketable value the stumpage, the contract price for cutting and hauling, and the expenses of running to the place of sale. The jury returned a verdict for the defendants. To the several rulings and charge aforesaid, the plaintiff excepted.

*A. W. Paine,* counsel for the plaintiff.

The defendant showed that certain logs were sold in the spring of 1854, at Mattawamkeag Forks, at a given price. Upon which the court instructed, that in estimating the damages, they could do so according to the market value at the first place where they had a marketable value, whether on

the shore where they were cut, or in the river at "the Forks," or in "the boom." This was erroneous.

In the first place, the rule was unjust in making the plaintiff responsible for a price for the logs at a point where he was under no obligation to have them, and where there was no certainty of their being, to command the market price at that point. This point has good illustration from the facts here detailed. The high prices paid, and which the jury took as the criterion, were those testified to by Stockwell & Eddy, who bought logs at "the Forks," in the early spring. This place is some twenty or more miles from the place where these logs were cut, and embrace all the most difficult part of the whole distance from the landing to the boom for the driving of the logs. There is the delay.

It also appears that the logs in controversy, though cut in 1853–4, arrived at the boom, some in 1854, some in 1855, some in 1856, and some are still behind. Where the logs were thus delayed, does not appear, but the truth probably is, that they were above the Forks. This being the case, the plaintiff was by the ruling made responsible for the price of the logs at a place where he was not only not bound to have them, but where nature forbid their being at the time. By taking the price as a criterion at any point below the landing, where the plaintiff was by contract to haul them, he is thus injured, as he is burdened with what he never assumed, either impliedly or by any express contract. *Non constat* that the logs would arrive at the Forks, to take advantage of the price. This consideration alone shows the wrong of the rule laid down by the court. But this is only the weakest of the many arguments against its correctness.

A second objection to the ruling lies in the proposition that the jury would disregard the *intended object* of the defendant in contracting to have the logs cut, and would take the *price* as a criterion, without reference to the design of the defendants in respect to the logs.

Taking for granted the correctness of the rule adopted by

the court, that the value of a thing at the time and place of agreed delivery is the measure of damages for its non delivery, there is still a most erroneous application of the rule here in the way the court have given it. That principle is at most but a *general* one, and not by any means one of universal application. Circumstances may aggravate the damages above that, as also depress them below, as we shall have occasion by and by more fully to remark.

The question submitted is one of *damages suffered by the party defendant from the plaintiff's non-fulfillment* of his part of the contract. And how can these be in any way so legitimately shown, as by measuring the matter by the intended use which the party was to make of the performance. The party is not to be allowed, on the one hand, for a profit which could not in the nature of things have been enjoyed if the contract had been fulfilled, nor, on the other hand, is he to be deprived of a benefit which he would naturally have enjoyed, merely because the other party did not know of it. All the circumstances are to be considered, and more especially the *reasonable* intentions of the party respecting it. In no other way can the true damages be assessed.

A agrees for the delivery by B to him, at a given time and place, of a quantity of flour or pork, articles of which the market of the place at all times affords a supply. The non-delivery in that case is easily compensated by the plain rule of its value at the time and place. But suppose it to be at a place where the market is bare, and the contractor, intending to transport it to other places for a market, or for his own use, is obliged to delay his teams or his vessel; this demurrage is equally to be allowed for, besides any profits which the delay has deprived him of. If, however, he would have stored it for sale at the place where it was to be delivered, and the market fell after that, would not the damages be accordingly. And if, instead of either, he intended to supply his teams in the woods, and by the non-fulfillment of his contract to transport it, it is not only delayed, but the

teams in the woods necessarily obliged to suspend work for want of it, would not all these direct consequences be legitimate cause of damages.

A agrees for a house frame of a peculiar construction with B, to be delivered at a certain time and place, which B designs erecting on the spot, and delay does not injure him at all, as he is not ready to proceed with it. He also contracts for another of the same construction (such as the market does not afford), to be transported to another port, and a delay causes a demurrage of a vessel especially chartered to transport it. What are the damages? Very clearly in the first he can get nothing, and as clearly in the latter he can recover for the demurrage. And yet the only difference is in the *intended* design with reference to each.

In the case at bar the design of the defendant, as he himself acknowledges, is expressly to stock his mills at Oldtown with the logs contracted for. He admits he did not intend to sell them; he should not have sold them if cut; he did not intend to sell them, and never had sold any; and further, he very properly introduces testimony to show the loss he encountered by not having them at his mills as he intended and should have had if the plaintiff had performed.

The matters to be considered in estimating damages in all cases are the natural and direct results of the breach—this and nothing more.

Was the loss of the profit which might have been made by a sale at Mattawamkeag Forks, or somewhere else along the river, a natural and direct result of the breach here? The party swears *it was not*, yet the court compel the jury to say *it was*.

Parsons states the doctrine on this point to be: "The party should not be permitted to make a profit by the breach of his contract, which he could not have naturally expected to make by its performance. The inquiry should be, what was the value of the thing at that time, taking into consideration all proved facts of price and sale, and all rational and

distinct probabilities, and nothing more." " Nor should one party be subjected to a loss, and the other be permitted to make a saving on a mere speculative probability." 2 Parsons on Con., 482.

The rule contended for is this, that if a party in contracting have a definite object in view, and by a non-performance of the other party, that object is affected favorably or unfavorably, the jury have a right to consider that object and its effect upon it, in making up their verdict—that they should consider that with all other legitimate results of the non-performance.

The jury should have been allowed to take the whole subject into consideration, and on the whole to say what damage has been suffered, if any. *Hingston* v. *Kelley*, 18 and 3, Exch., 360.

Another objection arises from the adoption of the rule given, in its *want of mutuality.* The true rule should be one that will work both ways, and while Berry is bound, Dwinel also should be.

Suppose Dwinel, having contracted here for the cutting of the logs for his mills, had delayed making other purchases until the market is bare, and he meets with an actual loss in detention of mills, &c., is he to be met with proof that the price of logs was such that he would have lost if he had undertaken to *sell.* He could well reply, I did not intend to sell, and therefore I protest against allowing for losses which my means for manufacture and keeping would have enabled me to avoid. The rule will not work both ways—it lacks reciprocation, and is consequently wrong.

A still more objectionable ruling of the court is in the instruction that the jury should regard *the price* at Mattawamkeag Forks, &c., as the criterion of *value,* and find damages accordingly.

This is *not* a contract for the *sale* or *delivery* of property, but a *contract for work and labor* to be done by the plaintiff on the defendant's property.

The two are entirely different in their character, and are governed by entirely different principles in the appraisement of damages in case of non-performance.

In the former case, for the non-delivery and sale of property according to agreement, the damages are to be assessed *generally according to the value of the thing at the time and place of agreed delivery.* 2 Greenl. on Ev., s. 261.

But this rule even is only a "general" one, and by no means an *absolute* or invariable one. If particular damages are suffered beyond the value, those are to be added. Thus if delay or necessary loss is occasioned by non-performance, these constitute a legitimate basis of damages. And if, on the other hand, there are facts to extenuate the damages, these may be given in proof accordingly.

In either case the party is to be *indemnified.* This is the great rule of damages in all such cases, viz.: that the innocent party should be made whole, or be completely *indemnified* for the loss which the non-performance has occasioned. Such is the language of all the authorities. *Shaw* v. *Nudd,* 8 Pick. R., 9–13; *Swift* v. *Barnes,* 16 Pick. R., 196–7.

This rule for the price of goods delivered to be considered as the criterion of damages, being thus but a general one, is liable still to be affected by *every* legitimate consequence growing out of the non-performance. Thus while it holds the one party to a full payment of all damages, it still holds the other to all reasonable care and precaution to keep these damages within proper bounds. *Mellen* v. *Mariner's Church,* 7 Greenl. R., 51, 56.

So that though we take that rule for the government of the case at bar, the ruling of the court is still erroneous, in making the price a criterion, and the only criterion, without any reference to any other circumstances.

We have so far considered the case of contracts for the sale and delivery of property, where the *general* rule is the price or value of the thing at the time and place of agreed delivery.

The case at bar is, however, a very different one. It is

not a contract for the sale and delivery of property, but a contract for work and labor to be performed on the defendant's property. This altogether changes the case. The thing is already the party's, (the purchaser's, as it were,) and all the party contracting has to do is to labor on it. In default of performance, the property does not become the contractor's, to be retained by him, but it is still the property of the original owner. Here is the basis of the rule provided in that case. The property in case of an agreed sale, and non-performance being the party's own, nothing passes to or from the other, and hence the measure of damage is plain and easy of understanding. The *status* of the party agreeing to purchase being unchanged, and the property not forthcoming, the rule is made so as to put the party in possession of the property agreed for. But here the property is the party's, and the contractor agrees to work upon it so as to accomplish a given result—bring it into a given state or condition of change or improvement. Whether the job is performed or not, the property still belongs to the original party.

Hence the rule governing damages in such case, must be different altogether from that in case of the sale of property. The rule in such cases is no where stated to be according to the value of the thing at any given market, nor is this by any of the authorities made a criterion. On the contrary, the rule is substantially this, that "the party shall pay such a remuneration as the benefit conferred is reasonably worth," or "what he has derived benefit," so that the party shall receive what he deserves. 2 Smith's Leading Cases, 14, 29, 30, &c. *Snow* v. *Ware*, 13 Met. R., 42, where the court say, "the law implies a promise by him to pay such sum as the benefit which he receives is reasonably worth." 2 Greenl. on Ev., s. 104, uses the same language in giving the rule, and this court have adopted the same rule in *Lawrence* v. *Gullifer*, 38 Maine R., 532; *Bassett* v. *Sanborn*, 9 Cush. R., 64; 6 N. H. R., 481. And such is the tenor of all the authorities, that the actual *benefit* which the party has received

Berry *v.* Dwinel.

over and above the injury which he has suffered from non-performance is to be allowed.

This rule perhaps leads to another as to what shall be the measure of deduction or allowance for that which is not performed. Upon this point the authorities are all plain and simple.

The leading case of *Hayward* v. *Leonard*, 7 Pick. R., 185, requires "so much to be deducted as is the loss or damage occasioned," i. e., so much as the party is injured by the other's fault.

*Bassett* v. *Sanborn*, 9 Cush. R., 66, "a remuneration should be made for omissions."

*Gleason* v. *Smith*, 9 Cush. R., 486, "deducting such sum as will indemnify the party," &c.

*Bowker* v. *Hoyt*, 18 Pick. R., 558, "may reduce the plaintiff's claim by showing any damages they have received by the plaintiff's failure."

*Smith* v. *Cong. M. H.*, 8 Pick. R., 178, so much was deducted *as would make the party whole*, or put the work into the state agreed upon.

*Jewett* v. *Weston*, 2 Fairf. R., 349, so much to be deducted as the defendant suffered by reason of non-performance. 14 N. H., 131, "the damages" are to be deducted. *Rogers* v. *Humphrey*, 39 Maine R., 382, the damages deducted were "those sustained by reason of the failure."

The question may recur, what are "the damages?" This is answered in *Hadley* v. *Baxendale*, 26 Law and Equity, 398. "The damages are such as both parties, in making the contract, may reasonably be supposed to have contemplated as the probable result of a breach."

"Damages for breaches of contract are only those which are incidental to and directly caused by the breach, and may be *reasonably supposed to have entered into the contemplation of the parties*, and not speculative profits and accidental or consequential losses." 2 Kent's Com., 480, and note.

"The damages," then, which are to be allowed for the non-performance are to be the actual and existing injury which

that non-performance has caused the party—not any fanciful, imaginary, speculative, or possible injury, but such reasonable, direct and probable injury as the condition and intention of the parties may have suggested—such an injury as may have arisen from a non-enjoyment of a benefit "naturally expected in its performance." 2 Parson's Con., 482.

This is conformable to the rule laid down in *Waters* v. *Townes*, 20 Eng. Law and Equity, 410, where the court say, "the jury, though not bound to assess damages at the amount of the profits, yet they might do so if satisfied by reasonable evidence that the plaintiff would have obtained such profits, if there had been no breach."

The case of *White* v. *Oliver*, 36 Maine R., 92, adopts in fact the very principle we contend for, to the exclusion of that given in the ruling. The jury were directed "to deduct for non-performance so much as it would cost to make the house according to the agreement." The full court say this is wrong. The party may not have been injured to that amount. The plaintiff should recover according to the contract price, "after deducting so much *as they are worth less on account*" of the non-performance. In other words, so much as the party has actually been damaged.

Sedgwick on Damages, 59. The party is not liable for a "damage that could not have been contemplated at the time of the contract." See also p. 67.

And this is the doctrine of the Napoleon Code, which held the contractor "liable for the damages foreseen, or which might have been foreseen at the time of the contract."

If we would apply the rule in the case of contract for *sale* to that of *work* on property, it would seem *to be just* to estimate not the value of the *property*, but the value of the *labor* bestowed, which brings us directly back to the rule urged, viz.: the actual value of the labor to the party contracting. How much has he been actually benefited?

The rule charges the whole loss over against one item of the value, viz.: the work of cutting and hauling alone. Should not the work of *driving* come in also?—and more

than all, the value of the trees? How much ought each to bear of the loss?

These considerations show how extremely contingent and uncertain are all these consequences for which the court have, by the rule, allowed the jury to assess the damages in the case.

The whole series of authorities on the point of direct and consequential damages, go to the length of excluding such testimony from the consideration of the jury. Sedgwick on Damages, ch. 3; 2 Greenl. on Ev., s. 256, and cases cited, and s. 261.

Besides, it is now well settled, that anticipated *profits* arising from such a contract as this cannot be allowed as an item of damages. The consequences in this respect are so contingent and uncertain, the court will exclude the whole. Such is now the settled doctrine in England. *Peterson* v. *Ayre*, 24 Law and Equity R., 382. And also in this country. Sedgwick on Damages, p. 69; *Smith* v. *Cardy*, 1 Howard R., 28; *Blanchard* v. *Ely*, 21 Wend. R., 342; *Thompson* v. *Shattuck*, 2 Met. R., 615; *Williamson* v. *Barrett*, 13 Howard R., 101; *Masterton* v. *Mayorse*, 7 Hill R., 62, in which the court say, "any supposed successful operation the party might have made, if he had not been prevented from realizing the proceeds of the contract at the time stipulated, is a consideration *not* to be taken into the estimate."

The court in that case draw the line between those profits which are allowable and those of the opposite character, plainly placing the case at bar on the disallowable or inadmissible side. The profits allowable are such as are a " part and parcel of the contract itself, entering into and constituting a portion of its very elements, something stipulated for," &c. " They are presumed to have been taken into consideration and deliberated on before the contract was made, and formed perhaps the only inducement to the arrangement."

To apply the case to the case at bar, could the *profits* of a sale of the logs at " the Forks," have entered into the minds of the parties contracting, when the party swears he never

18

dreamed of such an arrangement, and never intended to sell there or anywhere else?

*J. A. Peters*, counsel for the defendants.

The testimony objected to was one mode of showing value of the logs at a place certain. It was testimony tending to show what logs were worth, and was clearly admissible, according to the cases of *Warren* v. *Wheeler*, 21 Maine R., 487; *L. and W. C. R. R. Co.*, 13 Met. R., pp. 326, 327.

The rule of damages was correct; no absolute or perfect rule could be adopted, and courts approach a right standard as nearly as they can. This point is virtually settled in the case of *Smith* v. *Berry*, 18 Maine R., 122. Damages, in that case, were the "value of the articles at the time they should have been delivered." Apply that rule here; — what was the value of the articles at the time of delivery? It was precisely what they would bring at the first market, taking out any expense of getting them there. See *Parks* v. *Boston*, 15 Pick. R., 206, 207; *Gardner* v. *Field*, 1 Gray R., 154; *Dana* v. *Fielder*, 2 Kernan R., 40, and cases cited.

Dwinel testified what *he* intended to do with the logs; but there were two other defendants besides him.

What is hay worth a ton, at Exeter, Maine? There are no sales of hay in Exeter, but at Bangor, the nearest market, it is worth eleven dollars a ton; and it is worth one dollar a ton to haul it from Exeter to Bangor. What can be clearer than that its value at Exeter is ten dollars.

APPLETON, J.   When a party contracts to deliver goods at a particular place, and within a definite time, and no payment has been made, the law seems well settled, that the difference between the contract price and that which goods of a similar description and quality bore at the time when and the place where, by the contract, they should have been delivered, is the true measure of damages. Mayne on Damages, 81. Now whether logs are to be delivered within a definite time, and at a particular place, by virtue of a contract of sale, or

of a contract for hauling, are considerations in no way affecting their value.

The instruction that the value of the logs was to be determined at the first place where they had a marketable value, whether it was on the shore where they were cut, or at the forks of the river below, or in the boom, was correct. The market value of the logs at the time and place of delivery was the fact to be ascertained. But if, at the time and place of delivery, they had no market value, is the party violating his contract, therefore, to be exonerated from all liability and entirely exempted from the payment of damages? The market value is only ascertainable by sales made. If there had been none on the precise day, then it is necessary to have recourse to sales nearest the time at which the goods in question should have been delivered. *Dana* v. *Fielder*, 2 Kernan R., 40. The same principle applies in space. If at the place where the logs were to have been delivered there was no market, then their value at the nearest points which afforded a market, and at which sales were usually made, should be ascertained, in reference to the damages sustained. Such was the rule in *Gregory* v. *McDowell*, 8 Wend. R., 435, where the court held that evidence of value at other places in the neighborhood of the place of delivery might be admissible for the purpose of showing " what their true value was at that place. But when the evidence is clear and explicit as to the value of the article at the place of delivery, such value must control, no matter what the value is at other places." The necessity of this rule is apparent, as otherwise the law would afford no adequate security for the performance, and no sufficient punishment for the violation, of contracts.

The marketable value of the logs being ascertained, the stumpage, the contract price for cutting, hauling, and the expenses of running to the place of sale were, according to the instructions of the presiding judge, to be deducted. This was correct. They were expenses necessarily incurred in getting the logs to the place where they would be articles

of sale, and should be properly deducted from their market value when that was ascertained.

It seems from the testimony of Dwinel that it was not his intention to have sold the logs, but to have manufactured them. The plaintiff alleges that if the logs had been delivered according to the contract, and had been manufactured by Dwinel, according to his declared intention — that, as prices were shown to have been for boards manufactured out of logs of the description in the contract, the defendants would have made severe and heavy losses, and that, consequently, instead of having been injured by his non-performance of the contract the defendants were essentially benefited thereby, and that therefore they are not entitled to claim by way of *recoupment* any deductions from the plaintiff's demand.

The presiding justice instructed the jury, in finding the damages, to disregard " the defendants' design respecting them; that it was of no importance what defendants would have done, or intended to do, with the logs if they had been cut, or what their object was in contracting to have them cut," &c.

The theory of the law as to damages is that they are to be a compensation and satisfaction for the damages sustained. It rarely happens in any case that this can be completely attained. Even in the simplest case arising from the non-payment of money, the damages may be insufficient to remunerate the creditor for the injury arising to him from the non-payment of his debt, or to place him in as good a situation as if it had been paid when due. In more complex cases the difficulty of establishing rules which shall meet all the fluctuations of commercial life is still more apparent. The most that can be expected is to fix general rules, which shall approximate to that great end.

The measure of damages for the non-delivery of an article, as has been seen, is its value at the time and place of delivery. Remote and consequential damages — possible gains and contingent profits — are not allowed. The damages

recoverable are limited to such as are the immediate and necessary result of the breach. *Bridges* v. *Stickney*, 38 Maine R., 361. " I am satisfied," says Judge STORY, in the schooner Lively, 1 Gal., 314 and 325, " that an allowance of damages, upon the basis of a calculation of profits, is inadmissible. The rule would be in the highest degree unfavorable to the interests of the community. The subject would be involved in utter uncertainty." The price is based on the market value of the thing to be sold or delivered. It operates as a liquidated estimate of the worth of the contract to both parties. " It is obviously unfair that either party should be paid for carrying out his bargain, on one estimate of its value, and be forced to pay for failing in it, on quite a different estimate. This would be to make him an insurer of the other party's profits, without any premium for undertaking the risk." Mayne on Damages, 6. The purpose of the purchaser, the anticipated disposition of the thing purchased, and the probable profits, in case the anticipated disposition had been made, are not ordinarily the proper subject of damage. The actual loss at *the time and place* of delivery seems the true rule to be gathered from all the cases.

But the same principle which prevents the plaintiff from recovering for imaginary profits, equally deprives the defendant from setting up speculative losses, which, if the bargain had been completed, the purchaser might have sustained had he carried into complete effect his contemplated purpose. If remuneration is not to be made in the one case, neither is deduction to be made in the other. The party violating his contract is not to make profit from its non-performance, because, if it had been performed, and the other party had acted up to his original intention, losses might have occurred.

The parties contracted for the delivery of logs at a particular place, and within a prescribed time. The plaintiff's remuneration, if he performed his agreement, was neither to be increased or diminished by any disposition of the logs which the defendants might make between the time of their

delivery, by the terms of the contract, and their conversion into boards, and their final sale. Failing to perform his agreement, he is not to be exempted from damages in consequence of possible, or even probable losses, which might have arisen subsequent to the time, when, by its terms, it should have been performed.

It is not perceived that the plaintiff has suffered in his legal rights from the rulings to which exceptions have been taken.

*Exceptions overruled.*