THE SEABOARD AIR-LINE BELT RAILROAD Co. et al. v. THE

WESTERN AND ATLANTIC RAILROAD Co. et al.

Simmons, C. J.—1. Where, upon a valuable consideration, a Railway Company contracted with a Railroad Company to "interchange business, both through and local," with the latter and its connecting lines, for a specified term of years, "upon terms as favorable and as advantageous to said road and its connecting lines as those given to any other railroad entering" a designated city, the Railway Company was bound by the terms of this contract, not only as to freights shipped from or to points upon its own line, but also as to freights destined to or coming from points beyond the same; and therefore could not, so long as it pursued a different and

v 97-19

more favorable course as to other railroads entering the city in question, lawfully do anything to deprive the Railroad Company with which it had contracted, and its connections, of the benefits of "through rates and through proportions of rates and bills of lading founded thereon" as to freights of the latter class.

2. Under this contract, therefore, it was not, in view of the facts as found by the trial judge, lawful for the Railway Company, during the period therein stipulated, to voluntarily enter into contracts or maintain business relations with transportation companies beyond its own line, with the intention or purpose of depriving the other party to the contract (the Railroad Company) of the benefits above indicated; nor, with such intention or purpose, to refuse to receive from such transportation companies shipments of freight routed over the Railroad Company's line upon bills of lading giving to it the benefits of "through rates and through proportions of rates" upon such shipments.

3. The trial judge having, upon the evidence before him, found favorably to the plaintiffs upon the defendants' contention that the former had so violated the contract in question as to forfeit all right to invoke equitable aid in the premises, this court will not, in view of the conflicting evidence upon this question, interfere with this finding.

4. Inasmuch as a specific performance of the contract could not be decreed, and the damages resulting from a breach thereof are incapable of being estimated in money, it follows that there was no error in granting the injunction prayed for, to the extent that the same was granted, guarded as it was by the provision as to the plaintiffs giving bond, and the further provision that if the defendants should be damaged by any unlawful or inequitable conduct on the part of the plaintiffs, the defendants might move for a dissolution of the injunction; but the judge erred in not extending the terms of the order granting the injunction so as to make the same more comprehensive, as herein indicated; and direction is given that this order be enlarged accordingly.

*Judgment on main bill of exceptions affirmed, with direction.*

August 16, 1895.   *Judgment on cross-bill of exceptions affirmed.*

Injunction.   Before Judge Lumpkin.   Fulton county. April 16, 1895.

The Seaboard Air-Line Belt Railroad Co. was chartered to build a short line of railroad from a point on the Ga., C. & N. railway to Howell's station on the W. & A. railroad,

the real object being to afford to the Seaboard Air-Line system of railroads an entrance into the city of Atlanta, said system being composed of the Seaboard & Roanoke, Raleigh & Gaston, and Ga., C. & N. railroads.   Before said belt line was built, a contract was made on October 12, 1892, between the N., C. & St. L. Railway Co., lessee of the W. & A. railroad, of the one part, and the Seaboard Air-Line Belt Railroad Co., of the other part, reciting that it is considered for the best interest of both parties that an agreement be made to facilitate the doing of business over said belt line, and for the interchange of traffic; and in consideration of the premises the party of the first part agrees that, upon the completion of said railroad (belt line), it will, for the unexpired twenty-seven years of its lease of the W. & A. R. R., interchange business, both through and local, with said S. A. L. Belt R. R. and its connecting lines, upon terms as favorable and as advantageous to said road and its connecting lines as those given to any other railroad entering the city of Atlanta.   There were other provisions in the contract, as to rates for trackage of cars, and rental to be paid for union depot privileges, etc.   The belt line was built as contemplated, and the contract became of force.   In February, 1895, the W. & A. R. R. Co. notified the Seaboard Air-Line that, from and after March 1, 1895, through traffic rates on all business from competitive points would be discontinued as to freights to or from points on the S. A. L., for the alleged reason that the S. A. L. had been making unjust discriminations in freight rates, and had been manipulating and cutting the same to the injury of the W. & A. and other lines west of Atlanta.   This notice was pursuant to an order issued by the commissioner of the Southern Railway & Steamship Association, a voluntary unincorporated association of railroad companies, of which the N., C. & St. L. and W. & A. companies were members, and of which it seems the S. A. L. was a member up to September, 1894.   The circular containing this

order set forth that the S. A. L. had been practicing gross irregularities in the non-maintenance of rates, etc., and directed that fixed published rates be charged by all association lines, to and from their several junctions with the S. A. L., on all competitive traffic received from and delivered to the S. A. L., whether such traffic originated at or was destined to local, junction or terminal points on that line, or points beyond and reached by that line. The present petition was brought against the W. & A. and N., C. & St. L. companies, for injunction against their carrying into effect this order, and the withdrawal of the benefits theretofore enjoyed by plaintiffs under their contract, and against any discrimination being made by defendants between plaintiffs and the other railroads entering Atlanta. The petition also prayed for decree requiring defendants to specifically carry out the contract, etc. It was alleged, that ever since the making of the contract defendants had prorated on all traffic, through and local, to and from plaintiffs' lines, and extended a like prorating of freight rates upon similar business to all other lines entering Atlanta; that carrying out said order as threatened by the notice given would completely change the rates and method of business existing between plaintiffs and defendants, greatly increase the amount charged by defendants against plaintiffs, and diminish the amounts derived by plaintiffs from said traffic, which would be a discrimination against plaintiffs and in favor of the other lines connecting with the W. & A. at Atlanta, and a denial of the equal rates and facilities contracted for; that plaintiffs had faithfully complied with all the terms of the contract, and had accorded to defendants all rights, benefits and privileges provided for by the same; that the threatened action would demoralize and largely destroy plaintiffs' business; that they could not make other arrangements in Atlanta, because all other lines entering there were members of said association, and proposed to carry into effect the boycott order; that among

other favorable terms which defendants extended to other railroads entering that city was the issuance of through bills of lading for traffic interchanged between defendants and said railroads, and the acceptance of through bills of lading issued by said railroads and their connections, which privilege is of great value and indispensable in securing business from shippers, but which would be withdrawn from plaintiffs under the notice and order mentioned, to their irreparable damage, etc.  Defendants in their answer admitted that plaintiffs had complied with the letter of their contract, but claimed that they had violated the spirit of the same, by reason of numerous irregularities, manipulations and cutting of rates, whereby defendants were wrongfully deprived of proportions of freights to which they would otherwise have been entitled.  One among other grounds of complaint against plaintiffs was, that cars coming from the west by the W. & A., billed for points in the Carolinas or other points reached by the S. A. L., and delievered by the W. & A. to the S. A. L. at Howell's station, were delivered by the latter either to persons in Atlanta or to points different from the destination to which they were originally billed, such changes in destination being by shippers' direction; the effect of such changes being to procure shipments at much lower rates than if the shipments had been billed in the first instance to the point of actual delivery.  For example, if a car of grain were billed from Chicago to Raleigh, N. C., the rate would be 29 cents per hundred pounds, divided as follows:  from Chicago to Atlanta, 10 cents per hundred; from Atlanta to Raleigh, 19 cents per hundred; whereas if it were billed from Chicago to Atlanta, the rate would be 24 cents per hundred.  Therefore, if originally billed from Chicago to Raleigh, and the destination changed by direction of the shipper, the lines west of Atlanta would receive only ten cents, when they should receive 24 cents per hundred pounds.  On the issues raised in the answer as to

the conduct of plaintiffs, the evidence was conflicting. Plaintiffs contended that the transactions of which defendants complained, so far as the same really took place, were carried on with the knowledge and consent of defendants; and at the hearing the petition was amended by alleging that, prior to its filing, plaintiffs offered to defendants to correct and adjust any and all accounts between them, and to account for and pay to defendants any sums that might be ascertained to be due them, and to fully satisfy them in any and all demands arising out of the conduct of their business; and now offered to pay any and all sums which they might owe defendants, and to do full and complete equity to defendants in the premises.

The judgment of the court was, that defendants be enjoined from refusing to interchange business, both through and local, with the S. A. L. Belt R. R. Co., and its connecting lines, upon terms as favorable and advantageous as lawful terms given to any other railroad entering Atlanta; and from discriminating against plaintiffs in their business connections or relations with the W. & A. R. R.; and from carrying into effect said association order in so far as it would work any of said results; this injunction to apply to and cover all freights shipped or billed at or from any point on the line of the W. & A. R. R. or the terminus thereof, for transportation over said line of road and the lines of plaintiffs or any of them, and to freight delivered by plaintiffs or any of them to the W. & A. R. R. for delivery at like points on its line; but not to apply to freights originating and shipped at or from points beyond the line of the W. & A. R. R., and shipped on through bills of lading originating with some other road or roads beyond its line, nor to freight sought to be sent forward by plaintiffs on through bills of lading over the W. & A. R. R. to points reached by other roads beyond its line. It was required that plaintiffs give a bond to promptly settle with defendants any sums due for freight, etc.; and it was fur-

ther provided that, should defendants be damaged by any wrongful conduct of plaintiffs in respect to freights or freight charges, or should plaintiffs do anything unlawful or inequitable in respect thereto, or other good cause arise, defendants might move to dissolve this injunction. Plaintiffs excepted on the ground that the judge erred in limiting the scope of the injunction as stated in the judgment; and defendants excepted on the ground that no injunction whatever should have been granted.

*King & Spalding* and *Legh R. Watts*, for plaintiffs.
*Payne & Tye* and *Ed. Baxter*, for defendants.