|120 757|
|121 820|

## GRAHAM & WARD *v.* MACON, DUBLIN AND SAVAN-NAH RAILROAD COMPANY.

1. Carriers may issue through bills of lading and may make contracts for through shipments or for the interchange of freight between each other.

2. Railroad companies chartered under the general law may acquire and operate steamboats in connection with their lines of road.

3. There was, therefore, no public policy which prohibited a railroad company from entering into a contract with a firm, by which the latter was to acquire and operate a steamboat, and each party was to receive and deliver its freight to the other at the usual rates, in consideration of which the railroad company agreed to erect a hoist for the speedy and economical handling of freight between the boat and the cars.

4. Such a contract was not unilateral, was supported by a sufficient consideration, and the firm was entitled to maintain an action against the railroad company for damages for a breach of the contract.

5. Irrespective of the question as to whether the special damages declared on were improperly set out, or that the data for calculating the other damages were wanting, it was nevertheless error to dismiss the petition on demurrer, as the plaintiffs in any event were entitled to recover nominal damages for the breach of the contract.

Argued June 11, — Decided July 19, 1904.

Action on contract. Before Judge Adams. City court of Dublin. September 12, 1903.

A line of steamboats on the Oconee river was run in connection with a competitor of the Macon, Dublin and Savannah Railroad Company. In order to meet this competition, the railroad company, through its duly authorized agents, contracted with Graham & Ward that the firm should acquire a boat to be run on the river, agreeing to give them all the river freight controlled by the company, and to construct a hoist by which freight could be cheaply handled between the boat and the cars. It was further understood that Graham & Ward should deliver all the river freight controlled by them to the railroad company, and that both parties were to charge the usual rates. Relying on this contract, Graham & Ward leased a steamer for twelve months, and were ready, able, and willing to comply with their part of the agreement. Their petition against the railroad company alleges that the company failed to comply with its contract, and for more than twelve months neglected to begin the construction of the hoist, which had not been erected at the time of the filing of the suit; that they delivered to the company all freights hauled or controlled by them,

but that the company failed on its part to do likewise; that by reason of the failure to erect a hoist, they lost the larger part of the river freight, and the business worked up by them, as without the hoist they could not receive or deliver freight as quickly or safely as required by shippers, who would otherwise have given the same to petitioners; whereby they were damaged generally and specially. By amendment they added a list of persons who could and would have delivered certain designated amounts of freight, but were deterred from doing so by want of the hoist; also a calculation as to the amount of damage sustained by reason of the loss of the profits thereon. The petition was demurred to, on the grounds, that it set out no cause of action; that the contract was uncertain, wanting in mutuality, and without consideration; that the damages were too remote; and that the contract was contrary to public policy and void. The judge sustained the demurrer, and Graham & Ward excepted.

*Davis & Sturgis*, for plaintiff.
*Minter Wimberly* and *Akerman & Akerman*, for defendant.

LAMAR, J. (After stating the facts.) The contract for the exchange of freight was not void as being contrary to public policy. Instead of defeating, it was intended to meet competition. There is no suggestion of any restraint of trade, any increase of rates, any rebate or pooling, any unjust or unlawful discrimination, or anything that interferes with the right of a shipper to route his freight over a different or any desired line. Indeed, there is nothing to sustain this ground of attack, unless it be unlawful for parties who are able to contract to covenant to receive from and deliver to each all the freight controlled by the other. Graham & Ward, as individuals, had the natural and inherent power to make any contract not prohibited by law. The railroad company, on the other hand, had the power to make any contract not ultra vires or not prohibited by law. Carriers can sell through tickets and issue through bills of lading. Each of these parties had the right from day to day to interchange freight with the other. If they could make such an exchange daily, there is no reason why they should not do so weekly, monthly, or by the year. If they could do so voluntarily, they, for a valuable consideration, could bind themselves to make the interchange. To

such an agreement the law would of course attach the incidents of prompt and adequate service, and the further qualification that the rights of the shipper or of the public should not in any way be prejudiced. But that the policy of the law is not against the traffic arrangement between these parties appears from the fact that the boat line and the railroad line were equivalent to an extension each of the other. The railroad company either had, or, as matter of course, could have obtained the charter power to own and operate this boat on this river. Civil Code, §§ 2174, 2183. Had it done so, of course no one would dispute that the interchange of freight between the boat and the cars would have been legal. And if this could have been done thus directly, there is no reason why it could not have accomplished the same interchange of freight indirectly, and without a purchase of the boat; for, in effect the contract was the acquisition of a qualified interest in a boat line. As long as the public is not harmed, there is no reason why the parties should not be held to the terms of the contract. Compare *Seaboard Air-Line R. Co.* v. *W. & A. R. Co.*, 97 *Ga.* 289; *Coles* v. *Central R. Co.*, 86 *Ga.* 251; Wiggins Ferry Co. v. Chicago & Alton R. Co., 73 Mo. 389 (5 Am. & Eng. R. Cas. 1); Cumberland Valley R. Co. v. Gettysburg R. Co., 177 Pa. St. 528; Tonawanda R. Co. v. N. Y. Cen. R. Co., 42 Hun, 496; Wiggins Ferry Co. v. Ohio & Miss. R. Co., 142 U. S. 396; Atchison, T. & S. F. R. Co. v. Denver R. Co., 110 U. S. 668, overruling same case in 15 Fed. 650.

4. As to the other grounds of the demurrer:— The covenant of each of the parties was a sufficient consideration to support the promise of the other. Civil Code, § 3661. The lease of the boat, and the firm's readiness to receive and deliver freight, amounted to a performance which justified the demand by them for a corresponding performance of the railroad's agreement to erect the hoist and receive and deliver freight as stipulated. Nor was the contract unilateral or wanting in mutuality. The uncertainty as to its duration might have made it difficult to decree specific performance. But here the contention that it was for too indefinite or too long a period of time is answered by the fact that Graham & Ward only rented the boat for twelve months. And if, as contended, either party would have had the right to rescind, there is no allegation that any notice to that effect was given by

the railroad company, which, instead of revoking, broke the contract while it was in full force and being performed by Graham & Ward.

5. The case having evidently been dismissed on the ground that the contract was void, the question as to the elements and measure of damages was not passed upon. There was no statement as to the amount of freight diverted by the railroad company, and no data given from which the fact of damage therefor could be calculated. Any defect in this respect can be cured by amendment. But whether there were any special damages or not, it was error to dismiss the petition on demurrer, since Graham & Ward were at least entitled to recover nominal damages for the railroad's breach of the contract. *Kenny* v. *Collier*, 79 *Ga.* 743 (1); Civil Code, § 3801.

*Judgment reversed. All the Justices concur.*