### 9379.  TWIN CITY LUMBER COMPANY *v.* DANIELS.

1. There was no error in striking paragraph 10 of the petition, because: (*a*) The allegations therein were as to matters arising after the refusal of the defendant to comply with his contract. (*b*) The "bad faith" which will authorize recovery of attorney's fees in actions of this character is " 'bad faith' in the transaction out of which the cause of action arose."

2. (*a*) "Where a party contracts to deliver goods at a particular time and place, and no payment has been made, the true measure of damages is the difference between the contract price and that of like goods at the time and place where they should have been delivered." (*b*) "Where the delivery is to be made in installments, the measure of damages is the sum of the differences between the contract price and the market price at the several times of delivery." (*c*) "If there is no market at the place of delivery at the time fixed therefor, resort may be had to the nearest available market, with cost of transportation to the place of delivery usually added."

3. A vendor failing to comply with his contract to deliver goods ordered would not be liable for special damages because of consequent inability of the purchaser to fulfil a particular contract of resale, unless at the time of accepting the order he had notice that the goods ordered were the subject of a resale.

4. "In a suit for special damages alone, where the plaintiff is not entitled to recover the special damages sued for, there can be no recovery of general or nominal damages."

DECIDED AUGUST 1, 1918.

Action for breach of contract; from city court of Blakely—Judge Sheffield. October 2, 1917.

The Twin City Lumber Company brought suit against J. B. Daniels, alleging in part that "On July 21, 1916, the defendant was, as he still is, the owner of a sawmill and a valuable tract of valuable pine timber in said county, located near Rowena, a small station on the line of the Georgia, Florida & Alabama Railway. On said date petitioner was, as it still is, engaged in the manufacture of lumber, and in buying and reselling pine lumber at wholesale, as was known to defendant the date aforesaid. On said 21st day of July, petitioner entered into an executory agreement with the defendant for the purchase by it from him of two bills of lumber, to be manufactured by defendant at his said sawmill and delivered to petitioner at said railway station." One of said bills of lumber was for 480,000 feet and the other for 60,000 feet. The order for the 480,000 feet was to be delivered on cars at Rowena, Georgia, "at the rate of 100,000 feet or more, month

by month, and entire amount to be shipped complete on or before January 1, 1917." The other lot was also to be loaded at Rowena and shipment "to be completed on or before January 1, 1917." The 60,000 feet was to consist of three lots, and each lot to be shipped separately. On September 19, 1916, the defendant delivered a portion of the 480,000 feet, but he "has since failed and refused to manufacture and deliver any of the other lumber stipulated for in said writing, although petitioner has from time to time urged the defendant to do so, and he has at all times since had ample means and opportunity to manufacture and deliver the same in accordance with his aforesaid written agreement." On January 1, 1917, "petitioner, with a view to decreasing the amount of damages flowing to it from defendant's aforesaid breach of contract, made diligent effort to procure from other manufacturers in Georgia of pine lumber some agreement whereby petitioner might be furnished with pine lumber such as that which defendant obligated himself to manufacture and deliver to petitioner as aforesaid; but in this endeavor petitioner was unsuccessful, as the market price of lumber had steadily advanced from month to month after defendant had entered into his aforesaid undertakings with petitioner, and other manufacturers had previously sold in advance the entire product of their mills. On January 15, 1917, petitioner, acting by and through its authorized attorneys at law, urged defendant to comply with his aforesaid written obligations in the premises, notifying him that petitioner still wanted the lumber, as they were under contract for the resale of it, and informing him that petitioner was willing to extend the time for delivery any reasonable time, if defendant would only assure petitioner that he would deliver to it as much as six cars of lumber a month. A copy of the written communication sent to defendant by petitioner's attorneys is hereto attached and marked Exhibit C. But defendant wholly ignored said communication and has ever since persisted in his wrongful refusal to make any effort to atone for his said breach of contract or to lessen the damages necessarily flowing to petitioner therefrom." It was necessary for the petitioner to incur $250 traveling expense "in its effort to find an open market in which it could buy a substitute for said lumber." It is alleged that on January 1, 1917, there was not, and there has not since been, any market for lumber such as the defendant agreed to fur-

nish to petitioner, nor any substitute therefor, and petitioner could not in the open market at that point, nor in any neighboring town, purchase any such lumber at any price; that as it could not in the open market at Rowena or elsewhere in that vicinity purchase any substitute for the lumber which defendant had contracted to deliver to it, it was necessary for petitioner, in order to meet its obligations to other parties to whom it had resold the lumber, to find a substitute for same, which it succeeded in doing at Cochran, Georgia; that "the price which petitioner was thus forced to pay to said Cochran Lumber Company for sufficient lumber to supply that which defendant had failed and refused to deliver to petitioner under his aforesaid agreement was, owing to the advance in the price of lumber in the open market after said contract with defendant was made by petitioner, $2,500 over and above said contract price at which defendant had agreed to furnish the lumber to petitioner; and by reason of the defendant's said breach of his contract, he has become liable to respond in damages to petitioner for that amount, as well as for the additional sum of $250 incurred by petitioner in the way of traveling expenses, as aforesaid, in its effort to find an open market in which it could buy a substitute for said lumber which defendant failed and refused to deliver to petitioner under the terms and conditions of his aforesaid contract, as hereinbefore set forth;" that on account of the bad faith of the defendant the petitioner was forced to incur an expense of $500 in the employment of "legal counsel to institute and prosecute this suit;" and it prays for judgment against the defendant for the $2,500 which it was necessary for him to expend "over and above said contract price at which defendant had agreed to furnish the lumber to petitioner," and for the $500 as attorney's fees. The plaintiff, by amendment, struck from the petition its claim for $250 for traveling expenses.

The defendant demurred as follows: "First: That said petition sets forth no cause of action. Second: Defendant demurs specially to paragraph 10 of plaintiff's petition, because the same is immaterial and irrelevant. Third: Defendant demurs to paragraph 14 of plaintiff's petition, wherein it alleges the amount of damages, and says that the plaintiff does not allege any facts to show that it has been damaged in the sum of $2,500 over and above the contract price, or an additional sum of $250 for traveling expenses;

for that it fails to show what price it had to pay for the lumber bought, or where plaintiff had to travel, and what amount of traveling expenses were incurred." The trial judge passed the following order: "The within demurrer having been argued before the court, and the court having sustained the second ground of the demurrer and the third ground of the demurrer, except in so far as it refers to plaintiff's claim for $250 traveling expenses; and the court having given the plaintiff an opportunity to amend in accordance with the ruling of the court, and the plaintiff having refused to amend in accordance therewith, it is considered, ordered, and adjudged that plaintiff's petition be and the same is hereby dismissed." To this order the plaintiff excepted.

*Glessner & Collins,* for plaintiff.

*H. M. Calhoun, L. M. Rambo,* for defendant.

BLOODWORTH, J. (After stating the foregoing facts.) 1. There was no error harmful to the plaintiff in error in striking paragraph 10 of the petition. The allegations therein were as to matters arising after the refusal of the defendant to comply with his contract. Plaintiff in error insists that this paragraph should not have been stricken, because "such bad faith on his part was specifically alleged as a basis for the recovery of attorney's fees." The "bad faith" which will authorize recovery of attorney's fees in actions of this character (Civil Code of 1910, § 4392) is " 'bad faith' in the transaction out of which the cause of action arose." *Traders Ins. Co.* v. *Mann,* 118 *Ga.* 381 (6, 7), 384 (45 S. E. 426); *McKenzie* v. *Mitchell,* 123 *Ga.* 72 (51 S. E. 34); *Lovell* v. *Frankum,* 145 *Ga.* 106 (88 S. E. 569).

Plaintiff in error also insists that paragraph 10 should not have been stricken, because it illustrated "the good faith and diligent conduct of the plaintiff in seeking to avoid damages resulting from defendant's breach." Even if it was error for this reason to strike this ground of the petition, the error was harmless. Other paragraphs of the petition set out sufficient facts to show the alleged good faith of the plaintiff in error.

2. Where there is a contract of sale and the goods are to be delivered at a future time, the general rule is that "the measure of damages recoverable of the seller for failure to deliver goods sold is the difference between the contract price and the market value at the time and place for delivery; and it is incumbent on

one who seeks to recover such damages to submit evidence as to the market price at the time and place for delivery, in order to recover compensatory damages." *Sizer* v. *Melton,* 129 *Ga.* 143 (7), 151 (58 S. E. 1055); *Hardwood Lumber Co.* v. *Adams,* 134 *Ga.* 821 (68 S. E. 725, 32 L. R. A. (N. S.) 192); *Ford* v. *Lawson,* 133 *Ga.* 237 (6), 238 (65 S. E. 444); *Huggins* v. *Southeastern Lime & Cement Co.,* 121 *Ga.* 311 (5), 313 (48 S. E. 933); *Pitcher* v. *Lowe,* 95 *Ga.* 423 (4), 429 (22 S. E. 678); *Piedmont Wagon Co.* v. *Hudgens,* 4 *Ga. App.* 393 (61 S. E. 835). "Where the delivery is to be made in installments, the measure of damages is the sum of the differences between the contract price and the market price at the several times of delivery." *Sizer* v. *Melton,* supra; *Bainbridge Oil Co.* v. *Crawford Oil Mill,* 138 *Ga.* 741, 745 (76 S. E. 41); *Byrd Printing Co.* v. *Whitaker Paper Co.,* 135 *Ga.* 865 (3), 869 (70 S. E. 798, Ann. Cas. 1912A, 182). "If there is no market at the place of delivery at the time fixed therefor, resort may be had to the nearest available market, with cost of transportation to the place of delivery usually added." *Hardwood Lumber Co.* v. *Adam,* and *Ford* v. *Lawson,* supra; *Peninsular Naval Stores Co.* v. *State,* 20 *Ga. App.* 501 (93 S. E. 159).

In the petition in this case we find nothing that should take it out of the application of these general rules. The petition shows contracts for the delivery of lumber at different times, and shows breaches thereof, but alleges in effect that the measure of damages is the difference in the contract price and "the price which the plaintiff was forced to pay" in a different market, "owing to the advance in the price of lumber." Under the facts as shown by the pleadings, we do not think this is the measure of damages in the instant case. As shown by the bill of exceptions, the plaintiff was given, and it refused, an opportunity to so amend its petition as to show "the difference, if any, between said contract price and the market price of the lumber contracted for at the time and place of delivery." While the petition alleges that "at Rowena, Ga., the railway station at which defendant contracted, as aforesaid, to deliver to petitioner the lumber purchased from him, there was not on January 1, 1917, nor has there since been, any market for lumber such as that he agreed to furnish to petitioner, nor any substitute therefor, but, on the contrary, petitioner could not in the open market at that point, nor in any neighboring town, pur-

chase any such lumber at any price; the fact being that there is at Rowena, Ga.; no open market for the purchase of lumber nor at any other point in that immediate vicinity, nor has there been at any time since defendant's said breach of contract on January 1, 1917; and that "since petitioner could not in the open market at the point of delivery, or elsewhere in that vicinity, purchase any substitute for the lumber which, as aforesaid, defendant contracted to deliver to it, there was presented to petitioner the necessity, in order for it to meet its obligations to other parties to whom it had resold the lumber, to endeavor to find a market in which it could buy, at a reasonable price, a suitable substitute for the same;" yet there is nowhere in the petition any allegation that there was at Rowena, Ga., no market value for such lumber. While there may not have been a market for so large an amount of lumber as that stipulated in the contracts attached to the petition, yet it would not follow that there was no market value at Rowena, Ga., for the kinds and character of lumber therein described.

There is a great difference between the existence of a market for a thing and its market value. There may be no market for cotton at Kirkwood, a suburb of Atlanta, but it can not be said that cotton at Kirkwood has no market value. The rule is thus stated in *Ford* v. *Lawson*, supra: "If there was no market at the town where the delivery was to be made at the time fixed therefor, the price at the nearest market, with the expense of transportation to the place of delivery, could be shown." See also case of *Hardwood Lumber Co.* v. *Adam*, supra. In Berry *v.* Dwinel, 44 Me. 255, the rule is stated as follows: "Where a party contracts to deliver goods at a particular time and place, and no payment has been made; the true measure of damages is the difference between the contract price and that of like goods at the time and place where they should have been delivered; but if there be no market value at the place of delivery, the value of the goods should be determined at the nearest place where they have a market value, deducting the extra expense of delivering them there." In Tuttle-Chapman Coal Co. *v.* Coaldale Fuel Co., 136 Iowa, 382 (113 N. W. 827), the 3d headnote is as follows: "If there is no market value of like property at the place of delivery provided in the contract, then its value at other places not too remote can be shown,

for the purpose of fixing the damages for a breach of the agreement."

While it will be seen from the above that in fixing the market price some latitude is allowed, both as to the place and time, and that "where there is no market price some other criterion must be adopted," yet before this "other criterion" can be adopted, as was attempted in the instant case, the pleading must show that the goods to be delivered had no market value at the time and place of delivery, under the foregoing rulings.

3. It was contended that the measure of damages insisted on by the plaintiff in error is correct because the lumber was bought for resale. The 3d paragraph of the petition is as follows: "On said date petitioner was, as it still is, engaged in the manufacture of lumber, and in buying and reselling pine lumber at wholesale, as was known to defendant the date aforesaid." This is not sufficient to bring home to the seller, "at the time the offer was accepted," knowledge that this particular lumber was bought to be resold. The 5th headnote in *Huggins* v. *Southeastern Lime & Cement Co.*, supra, is in part as follows: "If, at the time the offer was accepted, the seller was not notified that the goods ordered had been resold, the buyer would not be entitled to recover either the difference between the contract price and the price of the resale, or damages which he had sustained growing out of his inability to deliver to the person to whom the goods had been resold." In the decision Justice Cobb said: "That portion of the plea, taken in connection with the other parts of the plea, alleges facts which would be sufficient to authorize a recovery of an amount representing the difference between the price of cement stated in the contract and the market price in Athens at the time delivery should have been made. But the plea does not claim damages of this character, the damages claimed being the difference between the contract price and the price at which the cement was sold to the Tallassee Company, together with the amount of damage which that company claims against Huggins on account of his failure to comply with his contract of sale. Huggins is not entitled to recover damages of this character, unless the Cement Company had notice that the order was for cement which was to be the subject of a resale. *Wappoo Mills* v. *Guano Co.*, 91 *Ga.* 396 (18 S. E. 308). Of course the Cement Company knew that Huggins as a

dealer would buy only for the purpose of reselling; but before it would be liable for the special damages resulting from a failure to fulfill a particular contract of resale, it was entitled to notice that the goods embraced in the particular order were the subject of a resale."

The decision last quoted from was predicated upon the decision in *Wappoo Mills* v. *Guano Co.*, therein cited. In *Sanders* v. *Allen*, 124 *Ga.* 684 (52 S. E. 884), the Supreme Court sustained a judgment granting a new trial upon the ground that the verdict was plainly based upon an erroneous theory as to the measure of plaintiff's damages. In that case "the amount of damages claimed by the plaintiffs was the difference between the contract price of the cotton and the price which they were compelled to pay for other cotton in order to fill contracts that they had made on the basis of their contracts with the defendants. It was not alleged or shown that the defendants had any notice that the cotton they contracted to sell the plaintiffs had been resold by them; and in the absence of such a showing no such basis of calculation could be used to compute their damages, the correct measure of damages being the difference between the contract price and the market price at the time the cotton should have been delivered." In the case last referred to, the defendants did not attack the petition by any appropriate special demurrer, pointing out the defect, and the evidence was in accordance with the allegations of the petition, but, notwithstanding, it was held that the verdict for damages was based on an erroneous theory of law and had no legal foundation on which to rest. As against the authorities above cited, it is argued that it was alleged in the petition that the defendant had knowledge and notice of the resale of the lumber specified in the contract, but an inspection of the petition will clearly show the erroneousness of this conclusion. It is true, as above stated, that it is alleged in the third paragraph of the petition: "On said date [July 21, 1916, on which the contract was made], petitioner was, as it still is, engaged in the manufacture of lumber and in buying and reselling pine lumber at wholesale, as was known to defendant at date aforesaid;" but this is not an allegation of notice to the seller that the goods embraced in the particular order were the subject of a resale. This distinction was clearly pointed out by Mr. Justice Cobb in the opinion in the case of *Huggins* v.

*Southeastern Lime & Cement Co.,* supra, where he said: "Of course the Cement Company knew that Huggins as a dealer would buy only for the purpose of reselling, but, before it would be liable for the special damages resulting from a failure to fulfil a particular contract of resale, it was entitled to notice that the goods embraced in the particular order were the subject of a resale." Mr. Chief Justice Bleckley clearly pointed out the same distinction in *Wappoo Mills* v. *Guano Co.,* supra. He said: "There was no evidence showing, or tending to show, that the Wappoo Mills had, at the time of making its contract with the company, any notice of any particular contract of resale which the .company had made· or would make. Nothing appears which would justify the assumption that the profits or losses resulting, or ·which might result, from any particular resale, were in the contemplation of the parties, so as to make these the measure of damages rather than that measure which the law prescribes in ordinary cases where a contract for the sale and delivery of goods is made and broken. Commercial fertilizers have long been a commodity of general commerce, and there would seem to be no reason why damages for the breach of a contract of sale of which they are the subject-matter, should not be measured with reference to market price at the time and place appointed for delivery, instead of the price which a particular purchaser from the first purchaser might agree to pay. The general rule is that one who, by his contract, is entitled to have goods, not yet paid for, delivered to him at a particular time and place, is compensated for his disappointment when he is allowed the difference between the price at which he purchased and the market price of the article in the market of delivery. This rule excludes any reference to a particular sale, except in so far as it may be evidence of the market price; and it wholly excludes any addition to the damages by reason of payments, voluntarily or involuntarily made on contract of resale, as a result of a breach thereof occasioned by an antecedent breach of the original contract of sale."

The plaintiff in error relies largely on the case of *Hardwood Lumber Co.* v. *Adam,* supra. That case is easily differentiated · from the instant one. There the seller had knowledge at the time of the execution of the contract, and at the time of each extension thereof, that the lumber was purchased for the purpose of resale.

The petition in this case does not disclose such a condition. Again, in that case the seller, in answer to letters offering to extend the time of performance, accepted the proffered extension and promised to comply with its contract, so that the purchaser was deprived of the purchased lumber until long after the expiration of the time when, under the original contract, the lumber should have been delivered, and at last, long after the lumber should have been delivered, was forced to enter the market and buy lumber to make good the contracts of resale which the seller had knowledge of from the beginning. In the case at bar it appears from the petition that no lumber was shipped under either contract after September 19, 1916, and that nothing was done by the defendant after that date to encourage the plaintiff in the belief or hope that he would continue to ship lumber under the contracts. All of the lumber specified in the contracts was to be delivered by January 1, 1917. Certainly the plaintiff would have no right to buy lumber 43 days after the date fixed for the delivery of the last installment (and much longer after some of the breaches of the contract), and recover the difference between the contract price and the price so paid. Especially is this so where it procrastinated, with knowledge (as is alleged in paragraph 9 of the petition) that the "market price of lumber had steadily advanced from month to month after defendant had entered into his aforesaid undertakings with petitioner."

4. Plaintiff in error insists that the court erred in dismissing the petition because he was at least entitled to recover nominal damages for the breach of the contract. In the case of *Haber, Blum, Bloch Hat Co.* v. *Southern Bell Telephone Co.*, 118 *Ga.* 874 (45 S. E. 696), by a full bench it was held: "While the breach of contract would entitle the party injured to nominal damages at least (Code [1895], § 3801), this principle of law does not apply in cases in which only actual and punitive damages are sued for, construing the pleadings most strongly against the pleader." In *Sparks Milling Co.* v. *Western Union Telegraph Co.*, 9 *Ga. App.* 728 (72 S. E. 179), it was said: "In a suit for special damages alone, where the plaintiff is not entitled to recover the special damages sued for, there can be no recovery of general or nominal damages." In *Hadden* v. *Southern Messenger Service*, 135 *Ga.* 372 (69 S. E. 480), the 3d headnote is as follows: "Generally the

rule that in every case of breach of contract the other party has the right to recover nominal damages does not apply where only special and punitive damages are sued for, and where such damages are not recoverable;" and in the decision Fish, C. J., said: "It is true that in every case of breach of contract the other party has a right to recover at least nominal damages, which will carry the costs. Civil Code [1895], § 3801. And where, in a suit for breach of contract, nominal damages are specifically claimed, or such special damages as are recoverable or general damages are alleged, the petition should not be dismissed on demurrer, as setting forth no cause of action, if it shows a valid contract and a breach of the same. *Sutton* v. *Southern Railway Co.,* 101 *Ga.* 776 (29 S. E. 53); *Roberts* v. *Glass,* 112 *Ga.* 456 (37 S. E. 704); *Graham* v. *Macon, Dublin & Savannah R. Co.,* 120 *Ga.* 757 (5) (49 S. E. 75); *Cowdery* v. *Greenlee,* 126 *Ga.* 786 (55 S. E. 918, 8 L. R. A. (N. S.) 137). In this case, however, there was no special prayer for nominal damages nor any allegation of general damages, but the only damages sought to be recovered were special damages for the loss of the services of the plaintiff's wife and punitive damages; and as such damages were not recoverable and there was no allegation of damages in the petition which could possibly cover nominal damages, the cause falls within the general rule, that where only special and punitive damages are sued for, a judgment sustaining a demurrer to the petition will not be reversed because the plaintiff would have been entitled to recover nominal damages if the allegations of the petition as to damages had been sufficient to cover the same. *Haber, Blum, Bloch Hat Co.* v. *Southern Bell Telephone & Telegraph Co.,* 118 *Ga.* 874 (4) (45 S. E. 696)." See also *Adams* v. *Bridges,* 141 *Ga.* 418 (*d*), 419 (81 S. E. 203).

We are therefore constrained to hold that the court did not err "in holding that the proper measure of damages was not set forth in the fourteenth paragraph of the petition, but that plaintiff was entitled to recover only the difference, if any, between the contract price and the market price of the lumber at the time and place of delivery." Nor did the court err in "dismissing plaintiff's petition upon its refusal to abide by said ruling and amend its petition accordingly," for the alleged reason that plaintiff was en-

titled to recover nominal damages and damages based upon defendant's alleged bad faith, including reasonable attorney's fees."

*Judgment affirmed. Broyles, P. J., and Harwell, J., concur.*