## BAINBRIDGE OIL COMPANY *v.* CRAWFORD OIL MILL.

The admissions contained in the defendant's plea, considered together with the uncontradicted evidence, demanded a verdict for the plaintiff for some amount, independently of certain evidence upon the admission of which error was assigned. Neither the evidence objected to, nor the excerpts from the charge, which were complained of in the motion for new trial, tended to affect the amount of the recovery. The evidence authorized a finding for the amount returned by the jury. While the excerpts from the charge, upon which error was assigned, were not in all respects accurate, the assignments of error upon them and upon the refusals to charge were not sufficient to require the grant of a new trial.

SEPTEMBER 28, 1912.

Complaint. Before Judge Frank Park. Decatur superior court. June 26, 1911.

On April 18, 1910, the Crawford Oil Mill instituted suit against the Bainbridge Oil Mill for damages from an alleged breach of the following contract:

"Sold to the Crawford Oil Mill, Crawford, Georgia, for account of the Bainbridge Oil Mill, Bainbridge, Georgia. Quantity: Six (6) tank cars of about 160 barrels each. Quality: Basis prime crude cottonseed oil. Shipment: One tank car each month during the months of August,. September, October, November, December, 1909, and January, 1910. Price: Thirty-four and one half cents (34½¢) per gallon of 7½ lbs. loose f. o. b. buyer's tank cars at Bainbridge, Georgia, Quitman, Georgia, or Valdosta, Georgia, seller's option, on a basis of prime crude cottonseed oil. Terms: Sight draft with Bs/L. attached for 90% of invoice; free of exchange; weight and quality guaranteed at destination. Any disputes under this contract to be settled by the rules of the Interstate Cottonseed Crushers Association, arbitration if any at New York City or Memphis, Tenn. Seller to have the privilege of drawing draft on the refiner. Seller paying brokerage."

The rules of the Interstate Cottonseed Crushers Association,.

referred to in the contract, provided as follows: "Failure on the part of the buyer to forward cars in the proper time, and give due notice thereof, shall entitle the seller at his option to cancel the contract, or to exact demurrage at the rate of two dollars per tank car for every day's delay, or, upon notice, the right to sell the oil for the account of the buyer within forty-eight hours, Sundays and legal holidays not included, after the lapse of five days, through any cotton-oil broker in good standing, at the best obtainable price, holding the buyer for losses. Sale to be for earliest obtainable shipment, original buyer to pay demurrage for all delays. But in case of forwarding tank cars for specified forwardings (paragraph d, rule 22), when it is shown that the tank cars were forwarded in due time as above specified, and delayed en route, the seller must fill them, charging the buyer two dollars per day per tank as above specified, and the buyer must accept them under the contract. In case the seller elects to cancel, he must, after he has acquired the right to cancel any contract or part thereof, notify the buyer by wire of his intention to do so, it being understood that the contract is in force until such notice of cancellation has been given by seller, and that the provisions of this rule apply to the movement of individual tank cars, and delay in regard to any number of tank cars embraced in one contract shall not influence action in regard to such tanks as may have been forwarded in proper time. Failure to give such notice shall operate as 'a renewal of the contract, and shall extend the time of same as many days as seller allows to lapse before giving notice."

The breach was alleged to consist of a failure and refusal by the defendant, upon demand, to deliver such part of the oil as was contracted to be delivered during the months of September, October, November, and December, 1909, and January, 1910. The measure of damages alleged was the difference between the contract price and the market value of the respective shipments of oil on the last day of the month in which each delivery was contracted to be made, with interest. The defendant by plea denied indebtedness, and set up affirmatively that the oil which was contracted to be delivered in August was repeatedly tendered to the plaintiff, but the plaintiff declined to give shipping directions and refused to accept it, and such refusal was a breach of the contract, and upon such breach, without fault on its own part, the defendant canceled

the contract and so notified the plaintiff, "and from the date of the breach of said contract, to wit, August 31st, 1909, this defendant was not bound to the plaintiff to perform said contract or any part thereof," and did not make the deliveries contracted to be made during the succeeding months, because there was no contract requiring it, and defendant was under no obligation to do so.

In addition to the admissions just indicated, the uncontradicted evidence showed that early in August the defendant requested the plaintiff to send a tank car to receive the oil contracted to be delivered during that month. No car was sent, but a request was made that the August delivery be transferred to September. The request was refused, and on the 25th day of August the defendant sold to a third person the tank of oil intended for the August delivery. At this sale the oil brought $160 less than the contract price. The defendant notified the plaintiff, and, on August 31 made a draft on it for this amount. Correspondence ensued between the respective presidents of plaintiff and defendant relative to this matter. The former expressed a willingness to pay the draft, but called attention to the terms of the contract, and submitted whether or not, relatively to the remaining tanks of oil, the contract should not be changed so as to make settlements on the basis of 8,000 gallons to the tank. The latter, on September 3, expressed a willingness to settle on that basis, but said that in making the draft for $160 he had done so on a basis of 8,000 gallons to the tank, whereas in fact it contained more. Nothing further was heard from the plaintiff; and on September 8 the defendant wrote to the plaintiff as follows: "We drew on you through the Lowry National Bank, for $160.00 difference between amount we sold the oil for, and your contract, and notified you we would draw on August 31st. The Lowry National Bank advises us the draft has not been paid. We now request that you either pay this draft or return it; and if the draft is not paid immediately, we desire to put you on notice that we will cancel the outstanding contracts without any further delay. If the draft is not paid immediately, we take it that it cancels contracts that we have with you."

The draft was not paid. On September 10, the plaintiff's president wrote to the defendant in effect that the draft would have been paid except for the absence of the writer and its return by the

bank to the drawer during his absence, enclosed a check for the amount of the draft, and expressed the hope that it would be satisfactory. On September 13, the defendant's president replied, among other statements, "Your failure to pay my draft voided the contract." There was evidence to show the market price of the oil contracted for at the several dates at which deliveries should have been made. The market price exceeded the contract price sufficiently to cover the amount of the verdict in favor of the plaintiff. The defendant's motion for a new trial was overruled, and it excepted.

*Wimbish & Ellis, W. M. Harrell,* and *M. E. O'Neal,* for plaintiff in error. *Samuel H. Sibley* and *Hawes & Pottle,* contra.

ATKINSON, J. Whether the plaintiff committed such a breach of the contract with respect to the August delivery as to authorize the defendant to cancel the contract is one of the controlling questions in this case. It was the duty of the plaintiff to furnish tank cars at either Bainbridge, Quitman, or Valdosta, Georgia, as the defendant might appoint. But it had all of August in which to do so. Before the plaintiff's time expired the defendant, on August 25, sold to another the oil intended for the August delivery, for less than the contract price, and charged the plaintiff with the difference, amounting to $160, and on August 31, still before the expiration of the plaintiff's time, made a draft on the plaintiff through a bank for the amount above stated. This action by the defendant was premature and unauthorized. After the oil had thus been disposed of, the plaintiff was under no duty to send a tank car for reception of the August delivery of oil, especially in the absence of a request by the defendant so to do, and a tender of other oil of the kind specified in the contract. Under the circumstances, there was no breach of duty by the plaintiff, and the defendant was not authorized to disregard the rest of the contract on account of a supposed breach. This conclusion is demanded by the admissions in the pleadings and the evidence above mentioned, independently of other evidence upon the admission of which error is assigned. Accordingly, if there had been any error in the court's ruling upon the admissibility of evidence, it would have been harmless.

As indicated above, the defendant was not excused from performance of the contract relatively to the September, October, No-

vember, December, and January deliveries. Under its admissions in the plea and the uncontradicted evidence, it did not make any of those deliveries, though the plaintiff demanded the oil and offered to pay for it in the manner and at the proper time provided by the contract. There was a clear breach of the contract by the defendant with reference to each of these deliveries. The plaintiff suffered damages in excess of the verdict by the measure which fixed the damage at the difference between the contract price and the market price at the time and place when the several deliveries should have been made. It was urged that if there was a breach by defendant, it occurred on September 13, .when the defendant in effect notified the plaintiff that it regarded the contract as canceled, and would not thereafter deliver any oil under it, and that the market price prevailing on that date should have fixed the time at which plaintiff's damages should have been estimated. But the plaintiff did not elect to treat the entire contract as terminated, but on the contrary continued to demand its performance. Under these conditions it had a right to demand the several deliveries for September and ensuing months, as above indicated, and it would have been the duty of the defendant to comply with such demand; but where the defendant refused to do so, thereby committing separate breaches of the contract, the plaintiff's damages would be measured by the difference between the contract price and the market price at the times when the several deliveries should have been made. *Ford* v. *Lawson,* 133 *Ga.* 237 (5, 6), 238 (65 S. E. 444). Under the views above expressed, a verdict for the plaintiff was demanded for some amount, and the evidence authorized the verdict found. None of the evidence which was excluded over objection, nor any of the excerpts from the charge, upon which error was assigned, could have affected the amount of the recovery. Some of these excerpts from the charge were inaccurate, but none of them, nor the assignments of error upon the court's refusal to charge, were sufficient to require the grant of a new trial.

*Judgment affirmed. All the Justices concur.*