ROME COOPERAGE COMPANY *v.* BETTIS COMPANY.

1. The general rule is that if a seller fails to deliver goods sold to a purchaser at the time and place specified in the contract, the measure of damages recoverable is the difference between the contract price and the market price at the time and place for delivery as fixed by the contract.
2. But where, subsequently to the date for delivery of the goods by the seller to the purchaser, both parties to the contract agree in writing to an extension of time in which the contract is to be performed, without specifying a particular date on which the goods are to be delivered, the law will imply that the goods are to be delivered within a reasonable time thereafter.
3. Where, subsequently to such agreement, a seller disposed of its plant by which it was to manufacture the goods to be delivered, thus rendering it impossible to perform the contract, the plaintiff's measure of

damages would be the difference between the original contract price and the market price which the purchaser had to pay in the open market for similar goods at the time of the breach.

4. Under the facts of this case the charge of the court as set out in the opinion was not erroneous for any reason assigned.

5. The petition set out a cause of action, and the court did not err in overruling the demurrer, nor in refusing a new trial.

No. 3789. DECEMBER 12, 1923.

Equitable petition. Before Judge Wright. Floyd superior court. April 6, 1923.

The H. Bettis Company brought suit against the Rome Cooperage Company, and alleged in substance as follows: During the month of March, 1917, plaintiff ordered from the Rome Cooperage Co. three cars of "heading" for the price of $45 per thousand sets, f. o. b. cars at Rome, Georgia. Copies of the three orders were attached to and made a part of the petition. Under date of March 13, 1917, the Rome Cooperage Co. accepted the orders, thereby constituting a binding and valid contract between plaintiff and the Rome Cooperage Co., a copy of the acceptance being attached to and made a part of the petition. Notwithstanding the contract the Rome Cooperage Co. failed and refused to deliver to plaintiff the goods therein called for, though often requested to do so. Thereafter the plaintiff, having sought to secure delivery of the goods and delivery being refused by the Rome Cooperage Co., went into market and purchased the "aforesaid goods at the current market price" during the month of March, 1918, and at that time the current market price was in excess of the contract price with the Rome Cooperage Co. in the sum of $1,992; an itemized statement of the difference being the contract price and the market price at which plaintiff was forced to purchase being attached to and made a part of the petition. Plaintiff purchased at the market price from the Anniston Cooperage Co., of Anniston, Alabama. On or about September 12, 1917, the Rome Cooperage Co. sold and conveyed its plant to J. R. Raible & Co., and plaintiff is advised and believes that the plant is now owned and held by a corporation known as the Etowah Cooperage Co. Plaintiff charges that the Rome Cooperage Co. is insolvent; that its assets are in the hands of officers to be distributed; and that plaintiff will not be fully protected unless a receiver be appointed to take possession of all the assets of the company and require an accounting of the dis-

position of the proceeds of the sale of the company's assets to J. R. Raible & Co., and to generally protect the interest of plaintiff in the premises, and to prevent waste of the assets of the company now remaining in the hands of the stockholders, and to force payment to plaintiff of the sum hereinbefore set forth, and to prevent a dissolution of the corporation. Plaintiff is without an adequate and complete remedy at law, and will suffer great and irreparable damage unless equity will intervene in the premises. J. R. Raible & Co. is represented by its agent in Floyd County, Georgia, A. G. Montgomery. The Etowah Cooperage Co. is a corporation under the laws of the State of Georgia having offices and agents in the State and county. The prayers are, that plaintiff have judgment against the Rome Cooperage Co. for $1,992, with interest from March 1, 1918; that a receiver be appointed to take possession of all assets belonging to the Rome Cooperage Co., and control and disburse the same under order of the court; that J. R. Raible & Co. be enjoined from paying to the Rome Cooperage Co. any portion of the indebtedness remaining due; that the latter be enjoined from transferring, selling, or conveying any of its notes, assets, or other property pending a determination of this suit; and for general relief and process.

The plaintiff amended its petition by alleging that after the making of the contract on April 12, 1917, plaintiff received from the Rome Cooperage Co. a letter in which it was stated: "The orders we now have for you we will get them out just as soon as we can. We have been delayed so much on account of rain and cold weather. We will try to get the first car out in two weeks, but do not promise for sure. We regret this delay very much, but it is the best we can do at this time." To which extension of time of delivery plaintiff assented; and on April 21, 1917, the Rome Cooperage Co. advised plaintiff: "We will do the best we can and let you know the very earliest date we can when we will make shipments." On May 3, 1917, the Rome Cooperage Co. advised plaintiff as follows: "In reply to yours of the 1st, we are sorry to tell you that we are closed down on account of wood, and cannot tell just when we will get to running again, but hope in the near future; and on account of this wood shortage it is impossible for us to say just when we can make shipment of any of your orders, but will just as soon as we can, and they will have their place on

our shipping order so no one will be rushed ahead of them. We regret this unavoidable [delay], but labor and wood are both hard to get at this time." Plaintiff continued to request information of the day as to when delivery of the orders would be made, and defendant continued to advise plaintiff that it would make delivery at some future date, so soon as it began operation again. It was not until on or about October 14 or 15, 1917, that plaintiff received information that the plant of the Rome Cooperage Co. had been sold to the Etowah Cooperage Co., and plaintiff then believed that the contract was to be filled by the Etowah Cooperage Co. Thereafter plaintiff called upon the Etowah Cooperage Co. for delivery under said orders; and the Etowah Cooperage Co., on January 31, 1918, advised plaintiff that it had no connection with the Rome Cooperage Co., which was the first information that plaintiff had received "of said condition." Relying upon the promises, plaintiff continued from time to time to expect delivery of the goods under the orders; and so soon as it ascertained that the Rome Cooperage Co. had sold its plant to the Etowah Cooperage Co., and that delivery was not to be made in accordance with the contract and in accordance with the promises above set forth, plaintiff then went into the open market during the month of March, 1918, and purchased the goods at market price, to the loss and damage of plaintiff as already set forth.

The court granted a temporary restraining order, which was dissolved on September 18, 1918. The defendants filed a demurrer on two grounds: (1) That the petition set forth no cause of action entitling the plaintiff to any of the relief prayed for; and especially that the allegations are insufficient to entitle it to the extraordinary relief prayed for. (2) That the measure of damages set forth is improper and illegal and that it would not be liable therefor under any circumstances; that if liable at all it would only be liable for the difference between the alleged contract price and the market price at the time and place of delivery specified in the contract. The demurrer was overruled, and error was assigned on exceptions pendente lite. The defendant filed an answer, admitting some of the allegations and denying the material allegations of the petition. It denied that the word "accepted" was on the bottom of the orders; it admitted that it wrote the letter of March 13, 1917, but averred that on the letter on which the

letter of March 13, 1917, was written was printed the statement that all orders received by it were subject to its ability to secure labor, material, etc., for the manufacture of the goods ordered, and that this was understood by the plaintiff, as it had had many dealings with plaintiff in addition to the one sued on; that any obligation on its part to fill the order was subject to the above conditions as well as to the conditions expressed in the letter of March 13, 1917. The defendant admits that it failed to deliver the goods referred to in the orders, for the reason that it was unable to secure either labor or material for their manufacture. It averred that it would not be liable under any circumstances to the plaintiff for the difference between the alleged contract price and the market price in March, 1918. It admits that on or about the date named it sold and conveyed its plant and equipment to J. R. Raible & Co.; that it was compelled to sell its plant on account of its inability to secure either labor or material for the manufacture of goods. It denies that it is insolvent; it admits, however, that the remaining assets of the company are being collected for the purpose of distribution. It would have been glad to fill the orders had it been able to secure labor and materials necessary in the manufacture of the goods; but being unable to do so, it was under no obligation to furnish the goods. Further, even if defendant is liable to the plaintiff at all, "it would only be liable for the difference between the alleged contract price and the market price at the time and place of delivery."

The jury returned a verdict in favor of the plaintiff for $560. The Rome Cooperage Co. filed a motion for new trial, which was overruled, and it excepted.

*Maddox, Lipscomb & Matthews,* for plaintiff in error.
*Denny & Wright,* contra.

HILL, J. (After stating the foregoing facts.) Exceptions filed both to the overruling of the demurrer to the petition and to the charge of the court set out in the amended motion for a new trial raise the single question for determination by this court as to the rule for the measure of damages under the facts of this case. The general rule is that the measure of damages recoverable of a seller for failure to deliver goods sold is the difference between the contract price and the market price at the time and place for delivery

as fixed by the contract.   Civil Code (1910), § 4131; *Bloom* v. *Americus Grocery Co.*, 116 *Ga.* 784 (2), 787 (43 S. E. 54); *Erwin* v. *Harris*, 87 *Ga.* 334 (5) (13 S. E. 513); *Huggins* v. *Southeastern Lime &c. Co.*, 121 *Ga.* 311 (5) (48 S. E. 933); *Hardwood Lumber Co.* v. *Adam*, 134 *Ga.* 821 (68 S. E. 725, 32 L. R. A. (N. S.) 192); *Ford* v. *Lawson*, 133 *Ga.* 237 (6) (65 S. E. 444); *Bainbridge Oil Co.* v. *Crawford Oil Co.*, 138 *Ga.* 741, 745 (76 S. E. 41); *Sizer* v. *Melton*, 129 *Ga.* 143 (7-10), 151 (58 S. E. 1055).

It is contended that the correspondence between the plaintiff and the defendant with reference to the delay in shipment carried forward the date of delivery as fixed by the contract to a future date, and that the plaintiff's measure of damages would be the difference between the contract price and the market price at the date on which the defendant repudiated the contract, on the substituted extension of time for delivery.   The court instructed the jury as follows: "But I instruct you further, if you find, at the time specified in the contract for the delivery of these goods, that, by certain correspondence between the plaintiff and defendant, the time of the delivery was extended from time to time, and that this extension amounted to a mutual agreement between the plaintiff and the defendant to extend the time from time to time in order to aid the defendant in making delivery as contracted, if they mutually agreed to it, then I charge you that the breach would occur whenever the defendant in this case, if it ever did from the evidence, finally breached the contract and refused to deliver the goods or comply therewith; and you will look in this case and see whether there was an extension of time by reason of correspondence such as I have explained to you, and when the breach occurred, if it did occur; and if you find a breach did occur later on, then I charge you the measure of damages in that event would be the difference in the contract price and the market price at the time and place of delivery at the time of the actual breach of the contract, whatever time you may find that to be.   In that connection I charge you where a party contracts to deliver goods at a particular time and place, and no payment has been made, the true measure of damages is the difference between the contract price and that of like goods at the time and place where they should have been delivered."   The exceptions to the charge were:

" (*a*) That said charge is an improper and incorrect basis for determining the measure of damages, the true measure of damages under the law being the difference in the contract price and the market price at the time and place fixed in the contract sued on. (*b*) That said charge is not adjusted to the pleadings or evidence in the case, there being neither pleading nor evidence as to any mutual agreement as to an extension of time in making delivery under the contract, and certainly none as to an extension of time to any definite date; that there is neither pleading nor evidence showing that any extension was ever mutually agreed upon, but, on the contrary, that the plaintiff in this case was continuously insisting upon a delivery in accordance with the contract. (*c*) That a mutual agreement as to an extension of time for delivery, unless based upon a valid consideration, would not have the effect of changing the measure of damages from that fixed by law, to wit, the difference between the contract price and the market price at the time and place fixed for delivery in the contract sued on. (*d*) That said charge instructed the jury that the plaintiff was entitled to recover the difference between the contract price and the market price at the time of the actual breach of the contract and the refusal to deliver the goods, irrespective of the time fixed in the contract, or any time which may have been fixed by mutual agreement. In other words, that the damages were to be calculated on the basis of the date the jury might find that the defendant refused to ship the goods; all of which was an illegal and improper basis for the calculation of the damages, and placed upon the defendant the burden of showing a definite and affirmative refusal to make delivery; that said charge improperly and illegally left to the jury to determine when the defendant refused to make delivery, and authorized them to find a verdict for the plaintiff for the difference between the contract price and the market price at the time of such refusal, without reference to the date fixed for delivery in the contract, or even any other date which had been mutually agreed upon between the parties, all of which was erroneous and contrary to the provisions of law."

It is contended by the plaintiff that while these contracts, which are set out in the evidence, specified a certain date for the delivery of the "headings," by mutual consent of both parties, as shown by the correspondence set out in the record, the time of delivery was

extended from time to time, no definite date ever having been agreed upon; that finally the defendant actually breached its contract by selling its plant and refusing to deliver the goods; and that the measure of damages is thus fixed as of this date. The contention of the defendant is that the measure of damages was fixed by the date stated in the original contract for delivery of the goods, and was not affected by any subsequent agreement between the parties. It appears from the record that while the original contract called for delivery of the goods at a specified time, the Rome Cooperage Co., on several occasions, wrote to the H. Bettis Co., before and after the date for the performance of the original contract and the delivery of the goods specified in the contract, stating that they would comply with the contract, and giving various reasons as an excuse for their delay in delivering the goods, among others, that they were unable, on account of scarcity of labor and wood and bad weather, to make delivery as specified in the contract, and requesting that additional time be granted them for performance of the contract. There is evidence tending to show that the plaintiff assented to this extension of time until it learned that the defendant had sold and disposed of its plant, thus rendering it impossible to comply with its contract. The plaintiff then went into the open market and purchased goods in lieu of those specified in the original contract, and brought the present suit to recover the difference between the contract price and the market price at the date of this purchase. There is evidence in the record tending to show that both the plaintiff and the defendant agreed upon an extension of the time stated in the contract for the delivery of the goods specified therein; and therefore the charge of the court as given was authorized by the evidence, and it became a question of fact for the jury to determine, under the charge, whether or not there had been an extension of the time in writing by the parties to the original contract. Whether the jury based their verdict upon this theory of the case, or upon the evidence as applied to the general rule as stated by the court, it is not necessary to determine. What we are holding is that the charge complained of, under the facts of this case, was not error for any reason assigned. There was no exception to the charge on the ground that the court should have construed the writing with reference to an extension of the time of delivery, instead of leaving it to the jury

to say whether there was an extension of time. It is true that in the subsequent agreement as to an extension of time no definite date was fixed on which the contract was to be performed; but the law will imply that the delivery should be made within a reasonable time, and the measure of damages would be fixed at such date when the defendant sold its plant, thus rendering itself unable to perform the contract.

*Judgment affirmed. All the Justices concur.*