742

## 19413.  KLIMAX OVERALL CO. *v.* CONVERSE & CO.

DECIDED MAY 16, 1929.

*Joseph D. Quillian,* for plaintiff in error.

*Green & Michael, G. A. Johns, J. C. Pratt,* contra.

BELL, J.  Converse and Company sued Klimax Overall Company for the alleged breach of a contract.  The court overruled the defendant's motion to strike the petition, allowed the petition to be amended over protest, overruled the defendant's objections to testimony and, after all the evidence was in, directed a verdict in favor of the plaintiff for $1567.15, this being the amount claimed in the suit as amended.  The defendant then brought the case to this court, assigning error upon the several rulings mentioned.

The contract was for the sale by the plaintiff to the defendant of ten bales of cloth goods, described as Graniteville 30″ improved drills, at 29 cents per yard, five bales to be delivered in October and five bales in November, 1920, and was in words and figures as follows:

"Confirmation of Order.  New York 4/26/20.

"Klimax Overall Company, Winder, Georgia. Your order dated.

"Terms 2/10/60X. Please refer to it as our order No. 2560.

"10 bales Graniteville 30″ improved drills 29¢ yd. unbranded. (Bales about 1200 yards each). ·

"Delivery 5 bales October 1920, 5 bales November 1920. Ship to above.

"In the event of fire, strikes, lockouts, epidemics, or other unavoidable casualties or conditions beyond our control; deliveries under this contract shall be proportioned to production. No claims will be allowed after goods have been cut or converted. Goods held for shipping directions are at buyer's risk. Any defect in quality or delay in deliveries shall affect delivery in question only. We reserve the right at any time to determine or modify credit extended hereunder.

"Converse & Company, Selling Agents, Hughes-McCampbell Department.

"Accepted for Klimax Overall Company. By G. S. Oakes, Secy. & Treas.".

The petition alleged that the plaintiff had shipped both lots according to the terms of the contract, the first lot containing 6114 yards and the second containing 6100 yards, making a total of 12,214 yards, but that the defendant refused to accept the same, to the plaintiff's loss and damage in the sum of $1587.82, based upon the difference between the contract price of twenty-nine cents per yard and the market value of sixteen cents per yard at the time and place of delivery.

The defendant denied every allegation of the petition except that as to residence, and pleaded, that, while the defendant "placed an order for certain goods as set forth in the petition," the defendant was dealing with the plaintiff as agent, and not as principal, and that plaintiff had no right to bring the suit. The defendant further pleaded rescission and cancellation. The defendant, however, offered no evidence in support of any of the allegations of its plea and did not attempt to make any issue by evidence except as to the fact and the amount of the damage. Other facts will be stated in the opinion.

The motion to dismiss the petition was based upon the following grounds: (1) It affirmatively appears that the plaintiff was not a party to the contract and had no right to bring the suit.

(2) The petition shows upon its face that the plaintiff shipped to the defendant 12,214 yards of cloth, when only about 1200 yards were ordered, it appearing from the copy of the contract attached as an exhibit to the petition that each bale of the cloth was to contain only about 120 yards, so that the petition discloses that the plaintiff shipped materially larger quantity than the amount called for by the contract. (3, 4, 5) Because of the stipulation, "We [the plaintiff] reserve the right at any time to determine or modify credit extended hereunder," the alleged contract was unilateral, incomplete and too indefinite to constitute a binding agreement between the parties. There was a further ground of the motion, styled in the bill of exceptions as ground 6, but this has not been referred to in the brief of counsel for the 'plaintiff in error, and will be treated as abandoned.

It is true that the copy of the agreement attached to the petition recited that each bale of the cloth was to contain about 122 yards, but the court allowed an amendment changing the figures to 1200 before passing upon the motion to dismiss the petition. As will be shown below, the allowance of the amendment was proper, and the motion to dismiss will be dealt with as if the contract had been correctly set out in the first instance.

The words "Selling Agents Hughes-McCampbell Department" were descriptio personæ and disclosed no right in any person other than the plaintiff as seller. The contract does not show on its face either directly or inferentially that it was made by the plaintiff in behalf of another whose identity was disclosed, and, hence, it was presumptively the individual undertaking of the plaintiff. See, in this connection, *Raleigh & Gaston R. Co.* v. *Pullman Co.*, 122 *Ga.* 700 (9) (50 S. E. 1008); *Strachan Shipping Co.* v. *Hazlip-Hood Cotton Co.*, 35 *Ga. App.* 94 (132 S. E. 454). In each of the cases relied on by the plaintiff in error, *Burg* v. *Malone*, 22 *Ga. App.* 175 (95 S. E. 739); *Richmond & Danville R. Co.* v. *Bedell*, 88 *Ga.* 591 (4) (15 S. E. 676), the declaration affirmatively disclosed agency on the part of the plaintiff.

The exact question here raised is controlled adversely to the plaintiff in error by the decision of this court in *Mendel* v. *Converse*, 30 *Ga. App.* 549 (8) (118 S. E. 586), which was a suit upon the same form of contract as that involved in the present case. In that case we had also for consideration the effect of the

stipulation reserving to the seller the right to determine or modify credit extended, and held that the agreement was not unilateral or otherwise invalid because of such stipulation. The court did not err in overruling any of the stated grounds of the motion to strike the petition.

■ The proposed amendment by which the plaintiff sought to strike from the copy of the contract attached to the petition the figures "122" and to substitute therefor the figures "1200" had the obvious purpose of correcting a typographical error, and under numerous decisions was legitimate and allowable. A case directly in point is *Chapman* v. *Skellie*, 65 *Ga.* 124 (1), wherein it was held that the copy of the note sued on as attached to the declaration could be amended so as to conform to the original. See also *Sartorious* v. *Paper Mills Co.*, 10 *Ga. App.* 522 (2) (73 S. E. 854); *Ross* v. *Jordan*, 62 *Ga.* 298 (2); *Hardee* v. *Lovett*, 83 *Ga.* 203 (9 S. E. 680); *Quillian* v. *Johnson*, 122 *Ga.* 49 (4) (49 S. E. 801); *Cox* v. *Georgia Railroad &c. Co.*, 139 *Ga.* 532 (77 S. E. 574); *Norden* v. *Collier*, 20 *Ga. App.* 98 (92 S. E. 652). There was here no attempt to amend the petition by abandoning the contract declared on and setting up another and different contract, as was the case in *Lamar* v. *Lamar &c. Drug Co.*, 118 *Ga.* 850 (45 S. E. 671). Compare *Kraft* v. *Rowland*, 33 *Ga. App.* 806 (2) (128 S. E. 812).

The court also allowed the petition to be amended by changing the alleged number of yards in one of the lots and the alleged total number in both lots, and by substituting a smaller amount as the damages claimed, so that the suit as thus amended was to recover damages at the rate of thirteen cents per yard on 12,055 yards, making a total of $1567.15. There was no objection to this amendment, and it is here referred to merely to remove a discrepancy which would otherwise exist between the allegations as above stated and certain testimony to be hereinafter noticed.

■ The court did not err in admitting the alleged contract in evidence over the objection that it contained no sufficient description of the subject-matter. The language, "10 bales Graniteville 30″ improved drills . . (bales about 1200 yards each)," was certainly sufficient as a key for the identification of the goods intended to be sold, even if not absolutely sufficient for all purposes. The agreement was not intended to represent an executed sale of

specific articles of property, but was an executory agreement for the future sale and delivery of articles of a described class, and plainly the language used was a sufficient designation of the kind or class of goods to be sold. *Bearden Mercantile Co.* v. *Madison Oil Co.,* 128 *Ga.* 695, 698 (58 S. E. 200) ; *Thomas Furniture Co.* v. *T. & C. Furniture Co.,* 120 *Ga.* 879 (48 S. E. 333) ; *Hicks* v. *Walker Brothers Co.,* 31 *Ga. App.* 395 (120 S. E. 694).

■ The remaining assignments of error, based upon the admission of evidence and the direction of the verdict, will be considered together. There was no issue as to the breach of the contract, the defendant having several times notified the plaintiff that the goods would not be accepted and that shipment would be useless, all without any sufficient justification or excuse. The plaintiff, however, declined to accept the breach as tendered, but elected to keep the contract in force for the purpose for which it was made. Accordingly, the goods were shipped by the plaintiff within the terms of the contract and were refused by the defendant when tendered by the carrier, and so the plaintiff, as a matter of law, was entitled to recover upon proof of the damage.

Henry B. Stimson, as a witness for the plaintiff, testified as follows : "I am an officer of Converse & Company. I am its secretary. I became familiar with the business of Converse & Company in 1913. I was associated with Converse & Company in the year 1920, and am familiar with the transaction involved in this controversy. . . We received an order from the Klimax Overall Company, the defendant in this action, through our Atlanta office, in April 1920. The order was dated April 17, 1920, and must have been received in our office within mailing time of then. The order called for ten bales of Graniteville 30″ improved drills. The price was 29 cents per yard. . . The confirmation specified that five bales were to be shipped in October 1920 and five bales in November 1920, on the usual terms of two per cent.—10 days—. 60 extra. We instructed the mill to make shipment as called for, after we had received confirmation of order. Five bales were shipped on October 1, 1920, consisting of 6114 yards, amounting to $1773.06, and five bales were shipped on November 2, 1920, consisting of 5941 yards, amounting to $1722.89. The total yardage was 12,055 yards. Converse & Company rendered bills for these shipments on October 1, 1920, November 2, 1920. . .

After the order was accepted by Converse & Company, and prior to the shipment of the merchandise, defendant attempted to rescind the contract, and Converse & Company refused to accept the rescission. We so notified the defendant and wrote that since we took the order in good faith we expected them to live up to the order. I can state what was the price of 30-inch improved drills of the kind called for in the order during October and November 1920. While the market was very quiet during this period, some sales were made early in October as high as 20 cents a yard, but later and in November had reached to 16 cents, and even at that price but few sales were made. I know what the selling price of this merchandise was at that time from two sources: from the prices current as reflected in a tabulation made by the trade papers and the sale sheets of Converse & Company for the period in question, of which I have made a thorough search. We made a sale on October 23, 1920, of this same Graniteville 30-inch drills at 15-1/2 cents per yard. It is true that these were seconds and that normally reduced the price one-half cent per yard below firsts. We also made a sale of firsts at 16 cents a yard on October 28. No sales that I can find were made during November 1920, but, as I have stated before, the market was stagnant and it was impossible to make a sale at any price. Starting early in the summer of 1920, prices of cotton textiles fell off rapidly until they had reached an unprecedentedly low point in November and December. The condition continued for January and February, until the spring of 1921. I am speaking of the market in New York. Unquestionably the same conditions existed throughout the United States, including Georgia, because the price of cotton goods is determined by prices in New York City, and those prices prevail throughout the United States except for possible differences due to freight. I can't give the exact figures for the amount of business Converse & Company did in cotton textiles in 1920 and 1921, but I can say for a certainty that it was upwards of $50,000,000 a year. During 1920 and 1921 Converse & Company sold Graniteville 30-inch improved drills as well as other kinds of merchandise. In that way I became acquainted with the prices of cotton textiles. Under our contract we sold the goods to the customer at 29 cents a yard. When they rejected it and returned it the market price of the merchandise was 16 cents a yard, so that the difference between

the price at the time the goods were sold and the time it was rejected was 13 cents a yard. Under the contract we shipped ten bales, totalling 12,055 yards, so that our damage, figured at 13 cents a yard, would amount to $1567.15."

Substantially this entire testimony was objected to, the grounds of objection being, (1) that the witness did not testify what was the market price in Winder, Georgia, the point to which the goods were to be shipped; and (2) that he did not testify "as to the value of goods of the quality or weight of the goods involved in the case."

We are of the opinion that the court did not err in admitting this testimony, and we think that with certain other facts in evidence, to be mentioned presently, it was such as to demand the verdict in favor of the plaintiff. While the evidence shows that the shipments were made on October 1 and November 2 respectively, it does not appear definitely when either shipment arrived at destination. The plaintiff in error says that the October shipment arrived and was refused on October 15, but there is nothing in the record to support this contention except a statement in an exhibit to the brief of evidence, consisting of a communication between the freight agent at Winder and a superior officer or agent of the railway company located elsewhere, in which the local agent made a report of refused and unclaimed freight. This report contained a statement showing the date of the arrival of the goods and of the carrier's notice to consignee, but the agent, though sworn as a witness, was not interrogated as to these matters and did not directly or indirectly affirm the truth of the statement. It was therefore without probative value, amounting to hearsay only. *Eastlick* v. *Southern Ry. Co.*, 116 *Ga.* 48 (42 S. E. 499).

The only legal evidence of the time of the tender and refusal of the October shipment was contained in letters from the defendant, as follows:

"Winder, Ga., October 18, 1920.

"Converse and Company, New York.

"Gentlemen: In reply to yours of the 4th inst., allow us to say, in normal times what you say is all right, perhaps, but this seems to be a day of cancellation. We get them and take our medicine. All we have is tied up in overalls and accounts. Overalls are not selling much and collections are very bad. We ad-

vised you to cancel this order before it was shipped, and you may expect it returned if it arrives here.

"Very truly yours, Klimax Overall Company."

"Winder, Ga., November 11, 1920.

"Converse and Company, New York City.

"Gentlemen: We are paying the freight on 5 bales of cloth you shipped the Klimax Overall Company and returning it to you. Our reason for not accepting these goods is on account of the conditions of the company. The writer has used every reasonable means to try to get a settlement out of some of the stockholders and creditors and put the business back on its feet; but to this time have not been able to do so. It looks now as if the business will have to be liquidated to settle the accounts, and it will like [lack?] some five or six hundred dollars in paying out of the hole even if it brings fifty or sixty cents in the dollar, and I do not believe it will bring that unless times change between now and the time it is to be sold. Under these circumstances I think it is best for you to accept the goods and give the Klimax Overall Company credit. We received an invoice and bill of lading for 5 bales more which will be treated in the same manner as this when they reach here. Assuring you that I am very sorry we are forced to take these steps, but trust that this will be satisfactory to you, for I feel that you should appreciate this action, taking into consideration the conditions of the company, and this will mean more money to you in the long run.

"Very truly yours, Klimax Overall Company, by J. V. Henson."

From the evidence it appeared that as a matter of fact the defendant did not itself return any of the goods, but that after their rejection they were reshipped to the plaintiff's order in December, on instructions to the carrier from an agent of the plaintiff specially employed for that purpose. Except as above indicated, there was nothing to show the time of arrival and rejection of the November shipment. From the facts thus taken from the record it could not have been found that delivery of the October shipment was offered and rejected prior to October 18, because in the letter of that date the defendant said, "You may expect it returned if it arrives here." From the other letter quoted above it appears that the first shipment arrived on or before November 11, but that the second shipment had not arrived at that time, but would be rejected when tendered.

The only inference deducible from the testimony of Stimson was that he was fully qualified to give evidence as to the market value of the goods in question, and that the market value of the identical class of goods was sixteen cents per yard, or less, during the latter part of October and all of November. In view of the fact that the defendant had notified the plaintiff that the goods would not be accepted, it was not necessary that the plaintiff should have made the shipments at all. The defendant having repudiated the contract and continuously refusing to be bound thereby, it was not incumbent upon the plaintiff to make, allege, or prove a tender of the merchandise (*Mendel* v. *Converse,* supra); and hence the case does not fail because of the uncertainty as to the time when the goods were offered to the defendant at Winder, the place of delivery under the contract. *Reed Oil Co.* v. *Smith,* 154 *Ga.* 183 (3), 187 (114 S. E. 56); Rivers Co. *v.* Putney, 27 N. M. 177 (199 Pac. 108, 27 A. L. R. 520). The plaintiff would in any event have had until the end of October to make the first delivery, and until the end of November to make the second (*Bainbridge Oil Co.* v. *Crawford Oil Mill,* 138 *Ga.* 741 (76 S. E. 41); 35 Cyc. 177, 182), and so might have had the market value determined as of the last days of these months respectively, unless there was proof that it had made an election to deliver on other dates. As stated above, there is nothing to indicate any delivery or tender of delivery prior to October 18, which was within the period as to which the market value was proved to be not more than sixteen cents per yard.

But it is contended that the witness testified to the market value in the city of New York, and not to the market value in Winder, the place of delivery. This contention would be well founded but for the testimony that "unquestionably the same conditions existed throughout the United States, including Georgia, because the price of cotton goods is determined by prices in New York City, and those prices prevail throughout the United States except for possible difference due to freight." If the prices of cotton goods throughout the country are determined by the price in New York, then the difference in freight could only have made the market value less in Winder, because it would have required an outlay of freight to carry the goods from that point to the governing market. The defendant is not hurt by the fact that he was allowed the higher price which obtained in the latter market and was charged no difference for freight.

We will now make brief reference to some of the authorities bearing upon the admissibility and weight of the evidence upon which the conclusion in the present case depends. The rule that questions of value are ordinarily for the jury is applicable when the question is as to the value of a specific article, but has no relevancy where, as in a case like the present, the question is one relating to the state of the market and to the actual selling price of goods of a given class at a particular time and place; for in such a case the testimony is not opinionative, but is in reference to a positive fact, and where it is undisputed the court may properly direct a verdict thereon. *Glynn Canning Co.* v. *Adams, 26 Ga. App.* 365 (2) (106 S. E. 207); *Southern Nursery Co.* v. *Montfort, 29 Ga. App.* 328 (4) (115 S. E. 150).

"The market price of a commodity is the actual price at which it is commonly sold. The price may be fixed by sales in the market at or about that time. If no sales can be shown on the day, due recourse may be had to sales before or after that day, and for that inquiry a reasonable range in point of time is allowed. Douglas *v.* Merceles, 25 N. J. Eq. 144; Beach *v.* Raritan &c. R. Co. 37 N. Y. 457." *Peninsular Naval Stores Co.* v. *State, 20 Ga. App.* 501 (3) (93 S. E. 159); *Twin City Lumber Co.* v. *Daniels, 22 Ga. App.* 578 (2) (96 S. E. 437). "If there was no market at the town where the delivery was to be made at the time fixed therefor, the price at the nearest market, with the expense of transportation to the place of delivery, could be shown. . . Evidence of the market price in a town near by that where the delivery is to be made is ordinarily inadmissible. But if it appears that the market price in the two towns is the same, evidence of what it is in one is competent as tending to show what it is in the other." *Ford* v. *Lawson, 133 Ga.* 237 (6) (65 S. E. 444). "The general rule is that in a suit for breach of contract for failure to deliver goods of a certain quality sold at a specified price, the measure of damages is the difference between the contract price and the market price at the time and place of delivery. . . This is not an inflexible rule in all cases, so as to exclude a recovery of actual damages sustained in cases to which such rule in its very nature is inapplicable; as, where there is no market at the time and place of delivery by which damages can be measured, and resort must be had to the nearest available market, with the cost of shipment

to the place of delivery added." *Hardwood Lumber Co.* v. *Adam,* 134 *Ga.* 821 (1, 2) (68 S. E. 725, 32 L. R. A. (N. S.) 192). "Where a witness had testified that he had been engaged in marketing peaches and other fruits for eighteen or twenty years in the locality where the contract was made and to be fulfilled, and that he kept 'posted' as to the prices of fruit in car-load lots in the different markets during the season covered by the contract, by means of daily communications by telegraph, there was no error in permitting him to testify that, from information received at that time, the markets where the peaches were resold compared favorably with other markets; and that, from a book of the copy telegrams of that year, the market price for Elberta peaches during the season covered by the contract was from a dollar per crate downward, while a few markets between certain dates mentioned quoted the price at a dollar and twenty-five cents per crate. Such evidence was not objectionable as being hearsay." See also, in this connection, *Farm Products Co.* v. *Eubanks,* 29 *Ga. App.* 604, 607 (116 S. E. 327); *Collins & Glennville R. Co.* v. *Beasley,* 36 *Ga. App.* 241 (2) (136 S. E. 167); *Frost* v. *Powell,* 10 *Ga. App.* 95 (5) (72 S. E. 719).

The instant case is distinguished from the cases of *Simpson* v. *Cincinnati, New Orleans &c. Ry. Co.,* 81 *Ga.* 495 (8 S. E. 524), and *Strachan Shipping Co.* v. *Hazlip-Hood Cotton Co.,* 161 *Ga.* 480 (2) (131 S. E. 283), since in neither of those cases was there any evidence of a governing market whose prices determined the prices throughout the country except for a difference due to transportation. We conclude that the court properly overruled the objection to the testimony of the witness Stimson and also that by the testimony of this witness and the other facts in evidence the verdict in favor of the plaintiff was demanded as a matter of law. We can not perceive how the jury could have found either that there was no proof of market value at the time and place of delivery or that the market value at that time and place was less than the witness testified it was, and we are thus unable to see that there was any issue for consideration by the jury. In our opinion, there was no error in directing the verdict in favor of the plaintiff. The conclusion just stated controls two other assignments of error upon the admission of evidence on the subject of market value, and makes it unnecessary to consider the weight or value of that

or any other evidence adduced, there being no evidence contrary to that set out above. So also, if the court erred, as contended, in admitting evidence as to the plaintiff's methods of business and as to the volume of its sales during a given period, the error could not have been prejudicial, since the other evidence was such as to demand the verdict for the plaintiff.

*Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*